COPY

**BESHADA FARNESE LLP**
Peter J. Farnese (SBN 251204)
pjf@beshadafareselaw.com
1999 Avenue of the Stars, Suite 1100
Los Angeles, California  90067
Telephone:  310-356-4668
Facsimile:   310-356-4601

Attorneys for Plaintiffs

FILED

2012 JUN 21  PM 4:02
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER TAROMINA, ALISON BURMEISTER, individually and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br><br>          v.<br><br>GASPARI NUTRITION, INC., a New Jersey Corporation, and DOES 1 through 10, inclusive,<br><br>                      Defendants. | CASE No. **CV12-5424** ~MRP (Motw<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT**<br><br>1. VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT, N.J.S.A. 56:8-1, ET SEQ.<br><br>2. VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200, ET SEQ.<br><br>3. VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17500, ET SEQ.<br><br>4. FRAUD<br><br>**JURY TRIAL DEMANDED** |

BESHADA
FARNESE LLP

CLASS ACTION COMPLAINT

1    Plaintiffs Christopher Taromina ("Taromina") and Alison Burmeister
2    ("Burmeister"), individually and on behalf of all others similarly situated (collectively
3    referred to herein as "Plaintiffs"), hereby complains against Defendants Gaspari
4    Nutrition, Inc. ("Gaspari"), and Does 1-10 (sometimes collectively referred to herein
5    as "Defendants" or "Gaspari") for unlawful, unfair, and deceptive business practices
6    in violation of the New Jersey Consumer Fraud Act, <u>N.J.S.A.</u> Section 56:8-1, et seq.,
7    California Business & Professions Code Section 17200 et seq., California Business
8    & Professions Code Section 17500 et seq., and the common law, related to the
9    advertising and sale of Gaspari's Spirodex sports nutrition product.

10
11                              **PARTIES**

12       1.    Plaintiff Taromina is, and at all times relevant hereto was, an individual
13   residing in the State of New Jersey.  Plaintiff purchased Spirodex in or about 2011
14   in New Jersey.  In doing so, Plaintiff relied upon the Spirodex advertising, product
15   box, and label, and, specifically, its claim that Spirodex was a "dietary supplement."
16   Plaintiff reasonably believed, based on the contents of the label and the Spirodex
17   advertising, that Spirodex: was an all-natural dietary supplement that did not contain
18   any synthetic ingredients, synthetic products, "non-dietary" ingredients, or drugs
19   and thus, consistent with advertising and labels viewed by Plaintiff, did not have any
20   negative side effects.  Plaintiff Taromina used Spirodex as directed in connection
21   with his diet and exercise regimen.  Plaintiff would not have purchased Spirodex if
22   Plaintiff knew that Spirodex contained non-dietary ingredients, which were not
23   naturally-occurring, was not DSHEA-compliant.

24       2.    Plaintiff Burmeister is, and at all times relevant hereto was, an
25   individual residing in the State of California.  Plaintiff purchased Spirodex in or
26   about 2011 in California.  In doing so, Plaintiff relied upon the Spirodex advertising,
27   product box, and label, and, specifically, its claim that Spirodex was a "dietary
28   supplement."  Plaintiff reasonably believed, based on the contents of the label and

1  the Spirodex advertising, that Spirodex: was an all-natural dietary supplement that
2  did not contain any synthetic ingredients, synthetic products, "non-dietary"
3  ingredients, or drugs and thus, consistent with advertising and labels viewed by
4  Plaintiff, did not have any negative side effects.  Plaintiff Burmeister used Spirodex
5  as directed in connection with her diet and exercise regimen.  Plaintiff would not
6  have purchased Spirodex if Plaintiff knew that Spirodex contained non-dietary
7  ingredients, which were not naturally-occurring, was not DSHEA-compliant.

8      3.     Plaintiffs are informed and believe that Defendant Gaspari Nutrition,
9  Inc. ("Gaspari") is a New Jersey corporation with its principal place of business at
10  575 Prospect Street, Suite 230, Lakewood, New Jersey 08701.  Gaspari is the owner
11  and distributor of Spirodex, and is the company that created and/or authorized the
12  false, misleading and deceptive packaging and advertisements for Spriodex.

13      4.     The true names and capacities, whether individual, corporate, associate
14  or otherwise of certain manufacturers, distributors and/or their alter egos sued herein
15  as DOES 1 through 10 inclusive are presently unknown to Plaintiff who therefore
16  sues these Defendants by fictitious names.  Plaintiffs will seek leave of this Court to
17  amend the Complaint to show the true names and capacities of said Doe Defendants
18  when the same have been ascertained.  Plaintiffs are informed and believe and based
19  thereon allege that DOES 1 through 10 were authorized to do and did business in the
20  State of California, including, but not limited to, Los Angeles County.  Plaintiffs are
21  further informed and believe and based thereon allege that DOES 1 through 10 were
22  and/or are, in some manner or way, responsible for and liable to Plaintiff for the
23  events, happenings and damages hereinafter set forth below.

24      5.     Plaintiff is informed and believes and based thereon alleges that at all
25  times relevant herein each of the Defendants was the agent, servant, employee,
26  subsidiary, affiliate, partner, assignee, successor-in-interest, alter ego or other
27  representative of each of the remaining Defendants and was acting in such capacity
28  in doing the things herein complained of and alleged.

1  6.    In committing the wrongful acts alleged herein, Defendants planned
2  and participated in the furthered a common scheme by means of false, misleading,
3  deceptive and fraudulent representations to induce members of the public to
4  purchase the Spirodex.    Defendants participated in the making of such
5  representations in that each did disseminate or cause to be disseminated said
6  misrepresentations.

7  7.    Defendants, upon becoming involved with the manufacture,
8  advertising, and sale of the Spirodex, and, in particular, the claims suggesting and/or
9  outright stating that the Spirodex could, in any way, provide increased protein
10 absorption to consumers, were false, deceptive and misleading.  Indeed, since the
11 first time that the Spirodex were advertised, Defendants have been aware that they,
12 individually and/or collectively, possess no competent and reliable scientific
13 evidence to substantiate their claims about the purported benefits and efficacy of the
14 Spirodex, and that those claims are false and deceptive.

15 8.    Defendants affirmatively misrepresented the "benefits" of the Spirodex
16 in order to convince the public to purchase and use the Spirodex, resulting in profits
17 to Defendants, all to the damage and detriment of the consuming public.  Thus, in
18 addition to the wrongful conduct herein alleged as giving rise to primary liability,
19 Defendants further aided and abetted and knowingly assisted each other in breach of
20 their respective duties and obligations and herein alleged.

21 **JURISDICTION**

22 9.    This Court has original jurisdiction over all causes of action pursuant
23 to the Class action Fairness Action ("CAFA"), 28 U.S.C. §1332(d)(2).
24 Specifically, the matter in controversy, exclusive of interests and costs, exceeds
25 the sum or value of $5,000,000 and at least one member of the putative class is a
26 citizen of a State different than Gaspari.

27
28

## VENUE

10.     Venue is proper in this District under 28 U.S.C. §§1391(c) and 1395(a), because Defendants: a) are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District through the promotion, marketing, distribution, and sale of the Spirodex in this District; b) do substantial business in this District; and c) are subject to personal jurisdiction in this District.

## STATEMENT OF FACTS

11.     This is a class action for restitution, damages, injunctive, and related equitable relief against Defendants related to false and misleading advertising in violation of the New Jersey Consumer Fraud Act, N.J.S.A. Section 56:8-1, et seq., Cal. Business & Professions Code Section 17200, et seq., and Cal. Business & Professions Code Section 17500, et seq., and the common law.

**Background**

12.     The sports nutrition industry is an ultra-competitive, multi-billion dollar per year business.  The category spans several types of products, including: protein powders; pre-, during-, and post-workout products; thermogenics; meal replacements; weight gainers; and performance supplements.

13.     Gaspari is a major player in the industry due, in part, to its expert knowledge of the consumer marketplace for sports nutrition products.  Gaspari does not manufacture the products it sells, rather, Gaspari is a marketing company whose primary purpose is to sell its products through a series of claims that it knows are material to consumers and that it intends for consumers to rely on in purchasing their products.

14.     Gaspari has built its industry-leading, corporate and product brands through integrated marketing campaigns utilizing a series of consistent, uniform claims on the product labels, website, point of purchase, print and internet

1    advertisements.   Gaspari differentiates itself and its products from competitors

2    through the tagline, "the name you trust, the brand that works."

3        15.    One of Gaspari's products is Spirodex.   Spirodex is part of the

4    diet/thermogenics category of sports nutrition products.  Gaspari advertises Spirodex

5    as a natural, dietary supplement that: "Increases thermogenesis and resting

6    metabolic rate"; "Enhances mood and energy levels"; "Ultra long lasting and

7    convenient, once-per-day dosing"; and "Enhances mental alertness and focus."  *See*

8    Exhibit A.

9        16.    According to Gaspari,  "By using standardized herbal analogs of the

10   actual neurotransmitters found naturally in your Central Nervous System that are

11   responsible for pleasure, alertness and appetite suppression, SPIRODEX is

12   guaranteed to provide you with an intense feeling of mood enhancement, mental

13   clarity and energy; all in a convenient, once-per-day dose with absolutely no crash

14   or annoying 'hang over' effect."  *See* Exhibit A.

15       17.    Gaspari bases these claims on the key ingredient in Spriodex's

16   "proprietary blend" (i.e. Gaspari's "SPIROBLEND"), marketed by Gaspari as

17   "*Geranium maculatum extract* [leaves and stems] standardized for 4-methylhexan-

18   2-amine."  *See* Exhibit B.

19       18.    "4-methylhexan-2-amine" is actually a chemical compound known as

20   DMAA.  DMAA is also marketed in the sports nutrition industry under several other

21   chemical names, including 1, 3-dimethylamylamine, methylhexaneamine, 4-methyl-

22   2-hexanamine, 2-amino-4-methylhexane.

23       19.    Unfortunately for consumers, Gaspari's statement that Spirodex

24   contains "*Geranium maculatum extract* [leaves and stems] standardized for 4-

25   methylhexan-2-amine" (hereafter "DMAA") is false and deceptive.

26       20.    In a November 2011 article published in the journal *Drug Testing and*

27   *Analysis*, researchers used gas chromatography-mass spectrometry ("GC-MS")

28   testing to determine that "geranium oils do not contain [DMAA] and that products

1 | labelled as containing geranium oil but which contain [DMAA] can only arise from
2 | the addition of synthetic material."

3 |     21.    According to the November 2011 *Drug Testing and Analysis* article,
4 | "geranium oils do not contain [DMAA] and the use of the name Geranamine for this
5 | compound appears to have been a marketing ploy."   In other words, Gaspari's claim
6 | that Spirodex contains geranium extract consisting of DMAA is false and deceptive
7 | because *DMAA is not present in geranium.*

8 |     22.    In point of fact, DMAA is a synthetic chemical compound which is not
9 | naturally occurring.  Because it is wholly synthetic, DMAA is not a natural, dietary
10 | ingredient.  Thus, Gaspari's marketing of Spirodex as a "dietary supplement" is also
11 | false and deceptive.

12 |     23.    In a April 2012 warning letter sent to Gaspari and a nine other sports
13 | nutrition companies, the Food & Drug Administration ("FDA") advised Gaspari and
14 | others in the industry that DMAA does not meet the definition of a dietary
15 | ingredient under the federal Food, Drug & Cosmetic Act and cannot be sold as such
16 | without approval from the FDA.

17 |     24.    In addition, the FDA stated that DMAA can have dangerous side
18 | effects.  The FDA states that DMAA "narrows the blood vessels and arteries, which
19 | increases cardiovascular resistance and frequently leads to elevated blood pressure.
20 | This rise in blood pressure may increase the work of the heart such that it could
21 | precipitate a cardiovascular event, which could range from shortness of breath to
22 | tightening of the chest and/or a possible myocardial infarction (heart attack)."[1]

23 |     25.    Thus, in addition to misrepresenting the nature of DMAA, Gaspari fails
24 | to advise consumers of the potential dangers of DMAA in a clear and conspicuous
25 | manner.

26 |
27 |
28 | [1]   *See* FDA Warning Letter to Gaspari,
http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm302211.htm.

1   26.   Plaintiffs thus bring this class action for damages, restitution and
2   related equitable relief, and injunctive relief against Defendants.

3   **Gaspari's Marketing and Labeling of Spirodex**

4   27.   Spirodex is part of the diet/thermogenics category of sports nutrition
5   supplements.

6   28.   According to the Spirodex advertising, Gaspari claims that each serving
7   of Spirodex contains the following 250mg "Proprietary Blend" of ingredients:
8   "SPIROBLEND™ (A proprietary blend consisting of Oxytropis *falcate* extract
9   [whole plant] standardized for biogenic amine content, Camelia *sinensis*, hordenine,
10  Geranium *maculatum* extract [leaves and stems] standardized for 4-Methylhexan-2-
11  Amine Content, Paullinia *cupana* [whole plant] extract standardized for purine
12  content)." In addition, Gaspari claims that Spirodex contains 175mg of Caffeine per
13  serving. *See* Exhibit B.

14  29.   In the advertisements for Spirodex, Gaspari claims that Spirodex is
15  "Once-per-day Thermogenic Mood Enhancing Stimulant Compound!*" *See* Exhibit
16  C.

17  30.   Specifically Gaspari advertises:

18  "Whether your goal is extremely low body fat, appetite
19  modification or super-productive days *without* a crash,
    Gaspari introduces SPIRODEX – the new *fast acting*,
20  Extended duration thermogenic. The first thermogenic
    supplement that you only need to take once per day, the first
21  fat loss supplement that makes you feel as great as you look."
22  *See* Exhibit C.

23  31.   Further, Gaspari claims that Spirodex contains "exclusive new
    ingredients" and "More Invigorating Doses of The Hottest Thermogenic and
24  Energizing Ingredients Found in The Other Leading Brands." *See* Exhibit C.
25  32.   Gaspari also claims that Spirodex:

26  a. "Increases Thermogenesis and Resting Metabolic Rate"
27  b. "Enhances Mood and Energy Levels"
28  c. "Crushes Cravings All Day"

1          d.    "Enhances Mental Alertness and Focus"

2          e.    "Feel Unbelievable All Day"

3   *See* Exhibit C.

4       33.     In addition, Gaspari claims:

> The research team at Gaspari Nutrition has done it again with SPIRODEX - a product destined to become the "King of Mood Supporting Stimulant Dietary Supplements."* By using standardized herbal analogs of the actual neurotransmitters found naturally in your Central Nervous System that are responsible for pleasure, alertness and appetite suppression, SPIRODEX is may help provide you with an intense feeling of mood support, mental clarity and energy; all in a convenient, once-per-day dose with absolutely no crash or annoying "hang over" effect.* We are extremely confident, once you try SPIRODEX™ you'll immediately know what it does and why you like it...a lot! Small, Yellow, VERY Different. SPIRODEX

*See* Exhibit A.

      34.     The net impression to consumers of Gaspari's advertising and marketing for Spirodex is that the product is a natural, "dietary supplement" that contains only "herbal" ingredients and does not contain synthetic, non-dietary ingredients.

**Gaspari's Claim That Spirodex Contains Geranium Extract Is False and Deceptive**

      35.     The primary ingredient in Spirodex is "*Geranium maculatum extract* [leaves and stems] standardized for 4-methylhexan-2-amine" (hereafter "DMAA").

      36.     After the final ban of ephedrine as a dietary supplement in the United States in 2005, Patrick Arnold (one of the scientists behind the BALCP Labs/ Barry Bonds steroid scandal) introduced DMAA in 2006 as a purported dietary supplement. Arnold marketed DMAA under the trademarked name Geranamine, a

8

CLASS ACTION COMPLAINT

1  name held by his company, Proviant Technologies[2]. This form of DMAA
2  purportedly extracted from geranium soon gained traction in the supplement
3  community as a replacement for the ingredient ephedrine in diet/thermogenics and
4  pre-workout products due to its stimulant effects.

5      37.    Arnold and others claim that DMAA is a naturally occurring substance
6  found in the geranium plant. In support of their claim that DMAA is found in
7  geranium, Arnold and others point to a Chinese research article, Z. Ping, Q. Jun, L.
8  Qing. A Study on the Chemical Constituents of Geranium Oil. *Journal of Guizhou*
9  *Institute of Technology*, 1996, 25.

10     38.    However, in a November 2011 article published in the journal *Drug*
11 *Testing and Analysis*, researchers used gas chromatography-mass spectrometry
12 ("GC-MS") testing to determine that "geranium oils do not contain [DMAA] and
13 that products labelled as containing geranium oil but which contain [DMAA] can
14 only arise from the addition of synthetic material." *See* Exhibit D.

15     39.    According to the researchers, "One of the attempts to try to conceal the
16 presence of this compound is to refer to its presence under the name Geranamine
17 and imply that it comes from geranium oil. The concern that geranium oil may
18 contain [DMAA] has also been raised and so any product listing geranium oil could
19 be used as a defence." *See* Exhibit D.

20     40.    However, when analyzing the results of the *Ping* study with those of
21 *Drug Testing And Analysis* Study, the authors concluded that: "[i]nspection of the
22 report by *Ping et al*. also clearly shows that their identification was incorrect or
23 possibly incorrectly translated." *See* Exhibit D.

24     41.    In conclusion, the *Drug Testing And Analysis* Study states: "These
25 studies as well as closer scrutiny of the original publication by *Ping et al*.[] show
26 that geranium oils do not contain [DMAA] and the use of the name Geranamine for

27

28 [2] *See*
http://www.washingtonpost.com/wpdyn/content/article/2006/05/07/AR2006050700913_pf.html.

1 this compound appears to have been a marketing ploy which has resulted in a large
2 number of athletes returning adverse findings." *See* Exhibit D.

3     42.     Thus, Gaspari's claim that DMAA in Spirodex is a natural extract of
4 geranium is false and deceptive.

5 **Gaspari's Claim That Spirodex Is a "Dietary Supplement" Is False and**
6 **Deceptive**

7     43.     Because DMAA is not found in geranium, it must be synthetically
8 produced. In other words, the DMAA found in Spirodex and other sports nutrition
9 products is wholly synthetic.

10     44.     Synthetic DMAA is actually a stimulant compound of the amphetamine
11 class. It is an amphetamine originally manufactured by Eli Lilly and Company and
12 patented under the brand name "Forthane."

13     45.     DMAA is also used, in combination with other drugs, as treatment for
14 hypertrophied or hyperplastic oral tissues. DMMA is also used as a "designer drug"
15 and is considered a banned substance in numerous countries.

16     46.     In the sports world, DMAA is considered a performance-enhancing
17 substance and is classified as a banned substance by: Major League Baseball, the
18 World Anti-Doping Agency ("WADA"), and the United States Anti-Doping Agency
19 ("USADA").

20     47.     Following the deaths of two soldiers in 2011 and the positive drug tests
21 of hundreds of others, United States military removed all products containing
22 DMAA from their Army and Air Force Exchange Service and Navy Exchange
23 stores around the world on December 3, 2011. The soldier deaths prompted the U.S.
24 military to remove all DMAA products from their shelves and the U.S. Army to
25 launch an "ongoing safety review after recording a number of other serious health
26 effects among known and potential users of products containing DMAA including
27 kidney and liver failure, seizures, loss of consciousness, heat injury and muscle
28 breakdown during exertion, and rapid heartbeat."

48.     On April 24, 2012, the FDA sent warning letters to Gaspari and nine other sports nutrition companies. The FDA advised Gaspari that synthetically produced DMAA is not a "dietary ingredient" and cannot be sold as a dietary supplement:

> It has come to our attention that [DMAA] used in products in the dietary supplement marketplace may be produced synthetically. Section 201(ff)(1) of the Act (21 U.S.C. 321(ff)(1)) defines "dietary ingredient" as a vitamin, mineral, amino acid, herb or other botanical, or dietary substance for use by man to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite, constituent, extract or combination of any dietary ingredient from the preceding categories. Synthetically produced [DMAA] is not a vitamin, mineral, amino acid, herb or other botanical. To the best of FDA's knowledge, synthetically produced [DMAA] is not commonly used as human food or drink; therefore, it is not a dietary substance for use by man to supplement the diet by increasing the total dietary intake. Further, synthetically produced [DMAA] is not a concentrate, metabolite, constituent, extract or combination of a dietary ingredient. Therefore, synthetically produced [DMAA] is not a dietary ingredient as defined in section 201(ff)(1) of the Act.

*See* FDA Warning Letter, http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm302211.htm.

49.     FDA further explains that:

> Assuming that [DMAA] is a "dietary ingredient," it would also be a "new dietary ingredient" for which a notification is required under 21 U.S.C. 350b(a)(2) and 21 CFR 190.6.
>
> Under 21 U.S.C. 350b, a dietary supplement that contains a new dietary ingredient (i.e., a dietary ingredient not marketed in the United States before October 15, 1994) shall be deemed adulterated under 21 U.S.C. 342(f) unless it meets one of two requirements:
>
> 1. The dietary supplement contains only dietary ingredients that have been present in the food supply as an article used for food in a form in which the food has not been chemically altered; or
>
> 2. There is a history of use or other evidence of safety establishing that the dietary ingredient when used under the conditions recommended or suggested in the labeling of the dietary supplement will reasonably be expected to be safe, at least 75 days before being introduced or delivered for introduction into interstate commerce, the manufacturer or distributor of the dietary ingredient or dietary supplement provides FDA with information, including any citation to published articles, which is the basis on which the manufacturer or distributor has concluded that a dietary supplement containing such dietary ingredient will reasonably be expected to be safe.
>
> To the best of FDA's knowledge, there is no information demonstrating that [DMAA] was lawfully marketed as a dietary ingredient in the

United States before October 15, 1994, nor is there information demonstrating that this ingredient has been present in the food supply as an article used for food in a form in which the food has not been chemically altered. In the absence of such information, [DMAA] is subject to the notification requirement in 21 U.S.C. 350b(a)(2) and 21 CFR 190.6. Because the required notification has not been submitted, your product is adulterated under 21 U.S.C. 342(f)(1)(B) and 350b(a).

*See* FDA Warning Letter, http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm302211.htm.

50.     Gaspari fails to inform consumers that DMAA was previously marketed as a drug, that DMAA is a synthetically created compound, that no supplement company has obtained approval to sell DMAA as a New Dietary Ingredient, and that Spirodex is not DSHEA-compliant.

51.     Accordingly, Gaspari's representations that Spirodex contains "herbal analogs", dietary ingredients, and is a "dietary supplement" are false and deceptive.

**Gaspari Fails to Advise Consumers of the Side Effects of DMAA**

52.     Plaintiffs are informed and believe that the use of DMAA can have potentially dangerous side effects. In fact, Don Catlin, preeminent anti- doping scientist, has noted in a Washington Post news article that DMAA has a chemical structure similar to amphetamine and ephedrine, and can cause increases in heart rate and blood pressure, and even death. Catlin further stated "this substance should not be out there ... it's a dangerous material." [3]

53.     According to the April 2012 FDA warning letters, the FDA states that DMAA "narrows the blood vessels and arteries, which increases cardiovascular resistance and frequently leads to elevated blood pressure. This rise in blood pressure may increase the work of the heart such that it could precipitate a cardiovascular event, which could range from shortness of breath to tightening of the chest and/or a possible myocardial infarction (heart attack)." [4]

---

[3]     *See* http://www.washingtonpost.com/wpdyn/content/article/2006/05/07/AR2006050700913_pf.html.

[4]     *See* FDA Warning Letter to Gaspari, http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm302211.htm.

54.     In addition to the safety concerns associated with DMAA, there are documented concerns that DMAA is also an addictive substance that can cause headache, nausea and stroke.

55.     Accordingly, in addition to misrepresenting the nature of the ingredients in Spriodex, Gaspari fails to advise consumers in a clear and prominent manner about the potential side effects of DMAA.

**Plaintiffs' Purchase and Use of Spirodex**

56.     Plaintiff Taromina purchased Spirodex in or about 2011 in New Jersey. In doing so, Plaintiff relied upon the Spirodex advertising, product box, and label, and, specifically, its claim that Spirodex was a "dietary supplement." Plaintiff reasonably believed, based on the contents of the label and the Spirodex advertising, that Spirodex: was an all-natural dietary supplement that did not contain any synthetic ingredients, synthetic products, "non-dietary" ingredients, or drugs and thus, consistent with advertising and labels viewed by Plaintiff, did not have any negative side effects. Plaintiff Taromina used Spirodex as directed in connection with his diet and exercise regimen. Plaintiff would not have purchased Spirodex if Plaintiff knew that Spirodex contained non-dietary ingredients, which were not naturally-occurring, were not DSHEA-compliant.

57.     Plaintiff Burmeister purchased Spirodex in or about 2011 in California. In doing so, Plaintiff relied upon the Spirodex advertising, product box, and label, and, specifically, its claim that Spirodex was a "dietary supplement." Plaintiff reasonably believed, based on the contents of the label and the Spirodex advertising, that Spirodex: was an all-natural dietary supplement that did not contain any synthetic ingredients, synthetic products, "non-dietary" ingredients, or drugs and thus, consistent with advertising and labels viewed by Plaintiff, did not have any negative side effects. Plaintiff Burmeister used Spirodex as directed in connection with her diet and exercise regimen. Plaintiff would not have purchased Spirodex if

1  Plaintiff knew that Spirodex contained non-dietary ingredients, which were not
2  naturally-occurring, was not DSHEA-compliant.

3

4                    **CLASS ACTION ALLEGATIONS**

5      58.    Plaintiffs bring this lawsuit on behalf of themselves and the proposed
6  plaintiff Class members under Federal Rule of Civil Procedure 23(b)(2) and (b)(3).

7      59.    The proposed Class is defined as:

8           All who purchased Spirodex in the United States for personal use and
            not for resale during the time period June 2008 through the present.
9           Excluded from the Class are Defendants' officers, directors, and
            employees, and any individual who received remuneration from the
10          Defendants to act as an endorser of Spirodex.
11

12     60.    The Class comprises thousands of consumers throughout the United
13  States.  The Class are so numerous that joinder of all members of the Class is
14  impracticable.  All of the dispositive questions of law and fact are common to the
15  Class.  The common questions include:

16          a. whether Defendants claimed on Spirodex' packaging, label, and
17             advertising that Spirodex was a "dietary supplement" that does not
18             contain any "non-dietary" ingredients or drugs;

19          b. whether the Spirodex does, in fact, contain the "non dietary" ingredient,
20             DMAA;

21          c. whether Defendants failed to disclose to consumers the side effects
22             associated with taking Spirodex;

23          d. whether the claims discussed above are untrue, or are misleading, or
24             reasonably likely to deceive;

25          e. whether Defendants' conduct is fraudulent and/or violates public
26             policy;

27          f. whether Defendants' engaged in unfair, unlawful and/or fraudulent
28             business practices in labeling, marketing and distributing Spirodex;

g. whether Defendants' violated the New Jersey Consumer Fraud Act in labeling, marketing and distributing Spirodex;

h. whether Spirodex is mislabeled, adulterated, and in violation of California Health & Safety Code;

i. whether Defendants' knew or should have known that the representations were false;

j. whether Defendants engaged in false advertising with respect to Spirodex;

k. whether Defendants' knowingly concealed material facts for the purpose of inducing unwary consumers into spending money on Spirodex;

l. whether Defendants' representations, concealments and non-disclosures concerning Spirodex are likely to deceive the consumer;

m. whether Defendants' representations, concealments and non-disclosures concerning Spirodex violate the NJCFA, FAL and/or the UCL;

n. whether Defendants should be permanently enjoined from making the claims at issue;

o. whether Defendants have been unjustly enriched and,

p. whether Plaintiffs and the Class are entitled to restitution and damages.

61.     Plaintiffs' claims are typical of the proposed Class, and Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class. Plaintiffs do not have any interests which are antagonistic to those of the proposed Class.     Plaintiffs have retained counsel competent and experienced in the prosecution of this type of litigation.  The questions of law and fact common to the Class members, some of which are set out above, predominate over any questions affecting only individual Class members.

1    62.    A class action is the superior method for the fair and just adjudication
2  of this controversy.  The expense and burden of individual suits makes it impossible
3  and impracticable for members of the proposed Class to prosecute their claims
4  individually.

5    63.    The trial and litigation of Plaintiffs and the proposed Class's claims are
6  manageable.    Defendants have acted and refused to act on grounds generally
7  applicable to the Class, making appropriate final injunctive relief and declaratory
8  relief with respect to the Class as a whole.

9    64.    Unless an injunction is issued, Defendants will continue to commit the
10  violations alleged herein, and the members of the proposed Class and the general
11  public will continue to be misled.

12    65.    If necessary, notice of this action may be affected to the proposed class
13  through publication in a manner authorized in the Federal Rules of Civil Procedure.

14

15                      **FIRST CAUSE OF ACTION**
16          **VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT**
                      **(N.J.S.A. § 56:8-1, et seq.)**
17    66.    Plaintiffs incorporate by this reference the allegations contained in the
18  preceding paragraphs as if fully set forth herein.

19    67.    Plaintiffs bring this claim individually and on behalf of the proposed
20  Class against Defendants.

21    68.    This Cause of Action arises under the New Jersey Consumer Fraud
22  Act, N.J.S.A. § 56:8-1, et seq., and is brought on behalf of the Plaintiffs and
23  members of the Class pursuant to §§ 56:8-19 and 56:8-2.12 of the Act.

24    69.    Section 56:8-2 provides, in relevant part:

25    The act, use or employment by any person of any unconscionable
26    commercial practice, deception, fraud, false pretense, false promise,
      misrepresentation, or the knowing, concealment, suppression, or omission of
27    any material fact with intent that others rely upon such concealment,
      suppression or omission, in connection with the sale or advertisement of any
28    merchandise or real estate, or with the subsequent performance of such

person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . .

70.    Plaintiffs and other members of the Class are consumers who purchased consumer goods (Spirodex)  pursuant to a consumer transaction for personal use and are, therefore, subject to protection under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq.

71.    Defendant manufactured, sold, distributed and/or advertised the Spirodex and is subject to liability under such legislation for unfair, deceptive, fraudulent and unconscionable consumer sales practices.

72.    The acts, practices, misrepresentations, concealments, and omissions of material facts by Defendant made in connection with the sale and advertisement of Spirodex, and with the intent that others rely upon such concealment, suppression and omission, constitute unlawful practices within the meaning of the New Jersey Consumer Fraud Act.

73.    Defendant engaged in unlawful practices by marketing and selling the Spirodex as a "dietary supplement" containing only, natural, non-synthetic dietary ingredients, when, in fact, Spirodex contains DMAA, a dangerous synthetic ingredient which is not a dietary ingredient.

74.    Defendant engaged in unconscionable practices by marketing and selling the Spirodex as a "dietary supplement" containing only, natural, non-synthetic dietary ingredients, when, in fact, Spirodex contains DMAA, a dangerous synthetic ingredient which is not a dietary ingredient.

75.    As a result of the use and employment by Defendant of the unlawful acts, Plaintiffs and the other Class members have suffered an ascertainable loss of money or property and have been damaged thereby.

76.    Plaintiffs and the other members of the Class would not have purchased the Spirodex if Defendant had disclosed that the product contained a synthetic, non-dietary ingredient.

77.     Under N.J.S.A.  §§ 56:8-2.11, 56:8-2.12 and 56:8-19, Plaintiffs and the other Class members are entitled to a refund of all moneys acquired by Defendant by means of the unlawful practices alleged above, as well as compensatory damages, including treble damages, attorneys' fees, and cost of suit.

## SECOND CAUSE OF ACTION

### VIOLATION OF UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200, *et seq.*)
### (Unlawful, Unfair, and Fraudulent Prongs of the Act)

78.     Plaintiffs incorporate by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

79.     Plaintiffs bring this claim individually and on behalf of the proposed Class against Defendants.

80.     California *Business and Professions Code* § 17200 prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons discussed above, Defendants have engaged in unfair, deceptive, untrue and misleading advertising in violation of California *Business & Professions Code* §17200.

81.     As alleged herein, Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and has lost money or property as a result of Defendants' actions.   Specifically, Plaintiffs purchased Spirodex for their own personal use.  In so doing, Plaintiffs relied upon the false representations regarding that Spirodex contains only dietary ingredients referenced above.  Plaintiffs would not have purchased Spirodex had they known that Defendants' claims about the products were false.

82.     **Unlawful Business Practices:** The actions of Defendants, as alleged herein, constitute illegal and unlawful practices committed in violation of the *Business & Professions Code* §17200.

83.     Defendants' have committed unlawful business practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and violating California *Civil Code* §§ 1572, 1573, 1709, 1710, 1711, 1770,

1 │ *Business & Professions Code* § 17200 *et seq.*, *Business & Professions Code* §

2 │ 17500, *et seq.*, and the common law.

3 │     84.    In addition, Defendants have unlawfully manufactured, packaged,

4 │ labeled, advertised, and/or distributed Spirodex in violation of California *Health &*

5 │ *Safety Code*, which governs Defendants' conduct, in that Defendants have

6 │ disseminated false advertisements of Spirodex, and that the product advertising and

7 │ packaging contain false or misleading statements as to the purported benefits of

8 │ Spirodex in violation of *Bus. & Prof. Code* § 17500, *Civil Code* §1750, which

9 │ govern Defendant's conduct.  Defendants also violated the unlawful prong of the

10 │ UCL because their false advertising of Spirodex, as set forth above, violates the

11 │ FTC Act (15 U.S.C. §45, *et seq.*) and the federal Food, Drug & Cosmetic Act.

12 │     85.    Plaintiffs and the Class reserve the right to allege other violations of

13 │ law which constitute other unlawful business acts or practices. Such conduct is

14 │ ongoing and continues to this date.

15 │     86.    **Unfair Business Practices**: California *Business & Professions Code* §

16 │ 17200 also prohibits any "unfair ... business act or practice."

17 │     87.    Defendants' acts, omissions, misrepresentations, practices and non-

18 │ disclosures as alleged herein also constitute "unfair" business acts and practices

19 │ within the meaning of *Business & Professions Code* § 17200 et seq. in that its

20 │ conduct is substantially injurious to consumers, offends public policy, and is

21 │ immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct

22 │ outweighs any alleged benefits attributable to such conduct.

23 │     88.    There were reasonably available alternatives to further Defendants'

24 │ legitimate business interests, other than the conduct described herein.

25 │     89.    **Fraudulent Business Practices**: California *Business & Professions*

26 │ *Code* § 17200 also prohibits any "fraudulent business act or practice."

27 │     90.    Defendants' claims, nondisclosures and misleading statements with

28 │ respect to Spirodex, as more fully set forth above, were false, misleading and/or

1    likely to deceive the consuming public within the meaning of *Business &*
2    *Professions* Code § 17200.

3       91.    Defendants' conduct caused and continues to cause substantial injury to
4    Plaintiff and the other Class members. Plaintiff has suffered injury in fact and has
5    lost money as a result of Defendants' unfair conduct.

6       92.    Pursuant to section 17203 of the California *Business and Professions*
7    *Code*, Plaintiffs and the Class seek an order of this court enjoining Defendants from
8    continuing to engage in unlawful, unfair, or deceptive business practices and any
9    other act prohibited by law, including  but not limited to: (a) selling, marketing, or
10    advertising Spirodex with false representations set forth above; (b)  engaging in any
11    of the illegal, fraudulent, misleading, unlawful, unfair and/or deceptive conduct
12    described herein; and (c) engaging in any other conduct found by the Court to be
13    illegal, fraudulent, misleading, unlawful, unfair and/or deceptive conduct.

14       93.    In addition, Plaintiffs request that this Court enter such orders or
15    judgments as may be necessary to restore to any person in interest any money which
16    may have been acquired by means of such illegal practices as provided in *Bus. &*
17    *Prof.* Code § 17203, and for such other relief as set forth below.

18       94.    Plaintiffs engaged counsel to prosecute this action and are entitled to
19    recover costs and reasonable attorney's fees according to proof at trial.

20

21                 **THIRD CAUSE OF ACTION**
22         **FALSE AND MISLEADING ADVERTISING**
           **(CAL. BUS. & PROF. CODE § 17500, *et seq.*)**
23       95.    Plaintiff incorporates by this reference the allegations contained in the
24    preceding paragraphs as if fully set forth herein.

25       96.    Plaintiff brings this claim individually and on behalf of the proposed
26    Class against Defendants.

27       97.    As alleged herein, Plaintiffs have standing to pursue this claim as
28    Plaintiffs have suffered injury in fact and has lost money or property as a result of

BESHADA
FARNESE LLP

CLASS ACTION COMPLAINT

1   Defendants' actions.   Specifically, Plaintiffs purchased Spirodex for their own

2   personal use.  In so doing, Plaintiffs relied upon the false representations regarding

3   that Spirodex contains only dietary ingredients referenced above.  Plaintiffs would

4   not have purchased Spirodex had they known that Defendants' claims about the

5   products were false.

6        98.    Defendants violated *Business & Professions Code* § 17500 by publicly

7   disseminating false, misleading, and unsubstantiated advertisements regarding

8   Spirodex.

9        99.    Defendants' false, misleading and unsubstantiated advertisements were

10   disseminated to increase the sales of Spirodex.

11       100.   Defendants knew or should have known that their advertisements for

12   Spirodex were false, misleading and unsubstantiated and that those advertisements

13   would induce consumers to purchase Spirodex. Such advertisements have deceived

14   and are likely to deceive the consuming public, in violation of *Business &*

15   *Professions Code* § 17500.

16       101.   Furthermore, Defendants publicly disseminated the false, misleading

17   and unsubstantiated advertisements as part of a plan or scheme and with the intent to

18   sell the products which are not scientifically "as advertised".

19       102.   Plaintiffs and the members of the Class have suffered harm as a result

20   of these violations of the FAL because they have incurred charges and/or paid

21   monies for Spirodex that they otherwise would not have incurred or paid.

22       103.   Defendants are aware, or by the exercise of reasonable care should

23   have been aware, that the representations were untrue or misleading.

24       104.   Plaintiffs and the members of the Classes have suffered injury in fact

25   and have lost money as a result of Defendant's false representations and false

26   advertising.

27       105.   Pursuant to *Business & Professions Code* § 17535, Plaintiffs and the

28   members of the putative Class seek an order of this Court enjoining Defendant from

1  continuing to engage, use, or employ their practice of advertising the sale and use of
2  Spirodex.

3      106.   Likewise, Plaintiff and the members of the putative Class seek an order
4  requiring Defendant to disclose such misrepresentations, and additionally request an
5  order awarding Plaintiffs and other members of the putative class restitution of the
6  money wrongfully acquired by Defendants by means of responsibility attached to
7  Defendants'   failure   to   disclose   the   existence   and   significance   of   said
8  misrepresentations.

9      107.   Plaintiff engaged counsel to prosecute this action and is entitled to
10  recover costs and reasonable attorney's fees according to proof at trial.

11              **FOURTH CAUSE OF ACTION**
12                     **FRAUD**

13      108.   Plaintiff incorporates by this reference the allegations contained in the
14  preceding paragraphs as if fully set forth herein.

15      109.   Plaintiff brings this claim individually and on behalf of the proposed
16  Class against Defendants.

17      110.   Defendants represented, in a single, consistent and uniform manner, the
18  alleged benefits of Spirodex.

19      111.   Defendants' statements about Spirodex as set forth more fully above
20  are false.

21      112.   Defendants knew or should have known that the representations set
22  forth herein were false when such representations were made and/or made the
23  representations recklessly and without regard for the truth.

24      113.   Plaintiffs and the Class reasonably relied upon Defendants' false
25  representations in purchasing Spirodex.

26      114.   Defendants' misleading and fraudulent conduct was knowing,
27  deliberate, wanton, willful, oppressive and undertaken in conscious disregard of, and
28  with reckless indifference to, Plaintiff and members of the Class' interest, and

BESHADA
FARNESE LLP

CLASS ACTION COMPLAINT

1  otherwise of the character warranting the imposition of punitive damages pursuant
2  to section 3294 of the Civil Code.

3      115. Plaintiffs and the Class suffered real economic losses and harm as a
4  result of Defendants' intentional misrepresentations and active concealment, as set
5  forth specifically herein.

6      116. Plaintiff's and the Class' reliance on Defendants' representations were
7  a substantial factor in causing the harm to Plaintiffs and the Class.

8

9                  **PRAYER FOR RELIEF**

10      WHEREFORE, Plaintiffs, on behalf of themselves and as a representatives of
11  all other persons similarly situated, pray for judgment against Defendants, as
12  follows:

13      1.    An order certifying that the action may be maintained as a Class
14  Action;

15      2.    An order enjoining Defendants from pursuing the policies, acts, and
16  practices complained of herein.

17      3.    An order requiring Defendants to pay restitution to Plaintiff and all
18  members of the Class;

19      4.    An order requiring Defendants to pay actual damages to Plaintiff and
20  all members of the Class;

21      5.    An order requiring Defendants to pay actual damages to Plaintiff and
22  all members of the Class, trebled in accordance with the New Jersey Consumer
23  Fraud Act;

24      6.    An order requiring Defendants to pay punitive damages to Plaintiff and
25  all members of the Class;

26      7.    For pre-judgment interest from the date of filing this suit;

27      8.    For reasonable attorneys' fees;

28      9.    Costs of this suit; and,

BESHADA
FARNESE LLP

CLASS ACTION COMPLAINT

10.    Such other and further relief as the Court may deem necessary and appropriate.

DATED: June 21, 2012                    **BESHADA FARNESE LLP**

                                        By: _____
                                            Peter J. Farnese
                                            Attorneys for Plaintiffs


## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury as to all claims for which the right to jury trial is provided.

DATED: June 21, 2012                    **BESHADA FARNESE LLP**

                                        By: _____
                                            Peter J. Farnese
                                            Attorneys for Plaintiffs

# EXHIBIT A

# EXHIBIT A

EXHIBIT A
25

INTERNET ARCHIVE
WayBackMachine

http://bodybuilding.com/store/gn/spirodex.html    Go

1 captures
17 Jan 11 - 17 Jan 11

DEC    FEB    Close
◄      ►
2010   2012   Help

Store    SuperSite    BodySpace    Forums

## BODYBUILDING.com™
Information. Motivation. Supplementation.

Free Gift With $75 Purchase*
24 / 7 Customer Service 1-877-991-3411
Money Back Guarantee*

View Cart  Shopping Help
✉ Discounts & Deals - Sign Me Up!

**STORE**

Store    **Search**

Main >> Store >> Brands >> Gaspari Nutrition >> Spirodex

# Gaspari Nutrition Spirodex

▼

**14 Tablets**

$19.99 $9.99    Order    In Stock

**60 Tablets**

$59.99 $35.99    Order    In Stock

**Manufacturer information:**
Other Gaspari Nutrition Products
About Gaspari Nutrition

**This works well with:**
Ginkgo Biloba
Acetyl L-Carnitine
Calm & Calmer

SPIR DEX

🔍 Click to enlarge.

**Gaspari Nutrition Presents:**

## Spirodex

**Once-per-day Thermogenic Mood Enhancing Stimulant Compound!***

Helps Support Mood, Mental Clarity And Energy!*

**Overall Rating**
Be the first to rate
Gaspari Nutrition    Out of 10
Spirodex.

✉ 📷 ⮌ 📷  Share This

Gaspari Nutrition Spirodex Product Guide

## Once-per-day Thermogenic Mood Enhancing Stimulant Compound!*

The research team at Gaspari Nutrition has done it again with SPIRODEX - a product destined to become the "King of Mood Supporting Stimulant Dietary Supplements."* By using standardized herbal analogs of the actual neurotransmitters found naturally in your Central Nervous System that are responsible for pleasure, alertness and appetite suppression, SPIRODEX is may help provide you with an intense feeling of mood support, mental clarity and energy; all in a convenient, once-per-day dose with absolutely no crash or annoying "hang over" effect.* We are extremely confident, once you try SPIRODEX™ you'll immediately know what it does and why you like it...a lot!

Small, Yellow, VERY Different. SPIRODEX

**FREQUENTLY ASKED QUESTIONS**

Q: Will Spirodex give me the typical jittery feeling that other dietary stimulant products can cause?

A: While virtually all stimulants help increase feelings of energy, Gaspari's R&D team recognizes that many people do not like some of the more physical, jittery feelings that can be associated with them. Spirodex has been uniquely formulated to minimize these types of side effects.

Q: How long can I take Spirodex?

A: Optimally, Gaspari Nutrition suggests that you use no more than 1 or 2 Spirodex Spirotabs once per day for a period not to exceed 6 weeks. Increasing the dosage or length of use will not increase the benefit of using this product.

Q: Who can best use Spirodex?

A: While Spirodex is a very powerful product, virtually all healthy men and women over the age of 18 years can expect to safely use Spirodex. There are some people who should not use Spirodex because they have pre-existing medical conditions or take certain medications. Please completely read the "Directions for Use" and "Warnings" sections of the label and consult your physician health care provider before using this product or any other dietary supplement.

**What's in Gaspari Nutrition Spirodex?**
View Specific Product Details:
14 Tablets

| 14 Tablets | |
|---|---|
| Serving Size: 1 Spirotab | |
| Servings Per Container: 14 | |
| **Amount Per Serving** | |
| SPIROBLEND™ (A Proprietary Blend Consisting Of Oxytropis Falcate Extract [Whole Plant] Standardized For Biogenic Amine Content, Camelia Sinensis, Hordenine, Geranium Maculatum Extract [Leaves And Stems] Standardized For 4-Methylhexan-2-Amine Content, Paullinia Cupana [Whole Plant] Extract Standardized For Purine Content). | 250 mg * |
| Caffeine | 175 mg * |
| * Daily Value not established | |

**Other Ingredients:**
Dicalcium Phosphate, Stearic Acid, Magnesium Stearate, Croscarmellose Sodium, Silicon Dioxide, Hydroxypropyl Methylcellulose (E5 And E15), Polyethylene Glycol, Water, Titanium Dioxide (Color), FD&C Yellow No. 5.

**Directions For Gaspari Nutrition Spirodex:** As a dietary supplement, orally ingest 1-2 Spirotabs once per day with 16-20 ounces of water after breakfast/before noon. Do not exceed this dosage under any circumstances. Due to the exceptional potency and long lasting effects of this product, begin by taking 1 Spirotab™ once per day for at least 4 days to assess tolerance to this product before increasing dosage to 2 Spirotabs once per day. Do not use this product for more than 6 weeks continuously without a 4 week break.

Warnings:

This dietary supplement is intended to be used by healthy adults 18+ years of age. Do not use product if you are nursing, pregnant or are attempting to become pregnant. BEFORE USING THIS PRODUCT SEEK ADVICE OF A PHYSICIAN. Do not take this product with any prescription drugs, over-the-counter products, other dietary supplements or if you have any pre-existing medical conditions. Do not take this product if you have or are at risk for high or low blood pressure,

Gaspari Nutrition Spirodex Purchase Information

Order today using our 100% secure server and get it at the lowest prices in the world with our fast, inexpensive 2-3 day shipping! NOBODY beats our overall price!

**14 Tablets**

$19.99 $9.99    Order    In Stock

**60 Tablets**

$59.99 $35.99    Order    In Stock

☑ BillMeLater

cardiac disease, stroke, seizure disorders, diabetes, kidney/liver disease, asthma, migraine headaches, psychiatric disease, HIV or AIDS, have difficulty urinating or if you are taking a MAO inhibitor. Do not take this product with other stimulants or if you are prone to dehydration or are exposed to excessive heat. Individual responses to dietary supplements may vary, for this reason some consumers of this product may need to consume only one (1) Spirotabs per day while others may need to consume two (2) Spirotabs per day. Do not exceed the suggested amount (two Spirotabs) under any circumstances as this will not increase benefits. This product should be used in conjunction with a proper diet and exercise program. Before starting any weight loss program, consult with your physician. Immediately discontinue use and call your physician if you experience any adverse reactions, including, but not limited to, rapid heart beat, dizziness, severe headache, shortness of breath or chest pains.

KEEP OUT OF REACH OF CHILDREN. This product may contain ingredients banned by certain sports or professional organizations. If you are subject to testing for performance enhancing compounds or any type of drug testing do not use this product under any circumstances. User assumes all risks, liabilities, and consequences related to performance enhancing testing and use of this product.

*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.*

**Learn more about** Caffeine.

**Check out other** Emotional Health Products.

RECOMMENDED FOR YOU

Customers who have purchased Gaspari Nutrition Spirodex also purchased:

See All Recommendations



Supreme Protein Presents:
Carb Conscious Bar
Supreme Protein for a Supreme Body!
Choose Size
Choose Flavor

From $2.39! Order

◼ More Info



MuscleTech Presents:
Nitro-Tech Hardcore Pro Series
Powerful Protein That Triggers An Anabolic Environment!
Choose Size
Choose Flavor

◼ More Info    From $27.99! Order



   

Give Us Feedback:
Report A Problem
Site Feedback

Follow Us:
Twitter
Facebook
RSS Feeds

Bodybuilding.com Newsletter
Receive exciting features, news & special offers from Bodybuilding.com
Enter your e-mail address
 Sign Up

© 2010 BodyBuilding.com, LLC. All rights reserved. BodyBuilding.com℠ and BodySpace® are trademarks of BodyBuilding.com, LLC.
BodyBuilding.com, LLC. , 2026 S Silverstone Way, Meridian, ID 83642 USA - 1-877-991-3411

# EXHIBIT B

# EXHIBIT B

# SUPPLEMENT FACTS

**Serving Size: 1 Spirotab**
**Servings Per Container: 60**

**Amount Per Serving**

| | |
|---|---|
| SPIROBLEND™ (A proprietary blend consisting of Oxytropis *falcate* extract [whole plant] standardized for biogenic amine content, Camelia *sinensis*, hordenine, Geranium *maculatum* extract [leaves and stems] standardized for 4-methylhexan-2-amine content, Paullinia *cupana* [whole plant] extract standardized for purine content). | 250 mg * |
| Caffeine | 175 mg * |

*Daily Value not established.

**Other Ingredients:** Dicalcium Phosphate, Stearic Acid, Magnesium Stearate, Croscarmellose Sodium, Silicon Dioxide, Hydroxypropyl Methylcellulose (E5 and E15), Polyethylene Glycol, Water, Titanium Dioxide (color), FD&C Yellow No. 5.

**DIRECTIONS FOR USE:** As a dietary supplement, orally ingest 1-2 Spirotabs once per day with 16-20 ounces of water after breakfast/before noon. Do not exceed this dosage under any circumstances. Due to the exceptional potency of this product, begin by taking 1 Spirotab once per day for at least 4 days to assess tolerance to this product before increasing dosage to 2 Spirotabs once per day. Do not use this product for more than 6 weeks continuously without a 4 week break.

# EXHIBIT C

# EXHIBIT C

EXHIBIT C
30

# LOOKING INCREDIBLE
# NEVER FELT SO GOOD.

Whether your goal is extremely low body fat, appetite modification
or super-productive days *without* a crash, Gaspari introduces
SPIRODEX – the new *fast acting*, extended duration thermogenic.
The first thermogenic supplement that you only need to take
once per day, the first fat loss supplement that really makes
you feel as great as you look.

## WHY SPIRODEX?

▸ More Invigorating Doses of The Hottest Thermogenic and
  Energizing Ingredients Found In The Other Leading Brands
▸ Exclusive New Ingredients for "Once-Per-Day" Dosing
▸ Increases Thermogenesis and Resting Metabolic Rate
▸ Enhances Mood and Energy Levels
▸ Crushes Cravings All Day
▸ Enhances Mental Alertness and Focus
▸ Feel Unbelievable All Day





**SPIRODEX™**
–The Little
**Yellow Pill**
**That Feels**
As Good As
**You Look!**

This is my favorite weight loss supplement of
all time! I keep the bottle by my bed and take
2 every morning as soon as I wake up.
It makes me feel great –*all day long.*"

**AVA COWAN**



EXHIBIT C
31

# EXHIBIT D

# EXHIBIT D

Short communication

Received: 5 August 2011       Revised: 4 November 2011       Accepted: 4 November 2011       Published online in Wiley Online Library

(wileyonlinelibrary.com) DOI 10.1002/dta.392

# Studies of methylhexaneamine in supplements and geranium oil

## A. Lisi,* N. Hasick, R. Kazlauskas and C. Goebel

A number of supplements are now available which are sold as fat burners or pre-workout boosters and contain stimulants which are banned in sport. Many contain methylhexaneamine under one of many pseudonyms including Geranamine, geranium oil or extract, or a number of chemical names such as 1,3-dimethylpentylamine. This has resulted in many athletes returning an adverse finding and having sanctions imposed. Other stimulants such as caffeine, phenpromethamine, synefrine, and phenethylamines are also to be found in supplements.

This communication shows that geranium oils do not contain methylhexaneamine and that products labelled as containing geranium oil but which contain methylhexaneamine can only arise from the addition of synthetic material.

Since the usual dose of methylhexaneamine is large, the drug is excreted at relatively high amounts for more than 29 h, the time for which the excretion was studied. Copyright © 2011 John Wiley & Sons, Ltd.

Keywords: Geranamine; Stimulant; supplements; methylhexaneamine; geranium oil

## Introduction

A number of supplements which are advertised for weight loss contain compounds which can be classified as stimulants or are related to known stimulants. Stimulants have been used as anorectic substances to aid in appetite suppression by the pharmaceutical industry for some time with compounds such as phentermine, sibutramine, benfluorex, diethylpropion, amphetamine, benzphetamine, and phenethylamine being available and included on the World Anti-Doping Agency (WADA) Prohibited List.[1,2] Other stimulants such as benzylpiperazine, phenpromethamine, synefrine, and phenylethylamines have also been sold as 'supplements' or components of supplements and have caused athletes to return an adverse analytical finding with subsequent sanctions. This seems to be a trend that has recently surfaced where weak stimulants are added to supplements to allow them to be advertised as slimming agents. Recently the use of 2-amino-4-methylhexane (1,3-dimethylpentylamine, methylhexaneamine) has become widespread in such supplements resulting in a plethora of adverse findings since its detection has been published and implemented by anti-doping laboratories.[3–5] Invariably the athletes have stated that they were unaware of the material's presence in the preparation and this plea has considerable weight, considering the numerous variations in the nomenclature used to describe this component.

WADA's Explanatory Notes on the 2011 Prohibited List[6] state:

*The stimulant 'methylhexaneamine' (which may be described, like many other substances, by other chemical names) is now included in the Prohibited List as a Specified Substance. This substance is now often marketed as a nutritional supplement and may frequently be referred to as 'geranium oil' or 'geranium root extract'.*

This statement comes from a general belief that geraniums contain methylhexaneamine based on what appears to be a single report in the literature.[7]

One of the attempts to try to conceal the presence of this compound is to refer to its presence under the name Geranamine and imply that it comes from geranium oil. The concern that geranium oil may contain methylhexaneamine has also been raised and so any product listing geranium oil could be used as a defence.

Geranium oils appear to be mainly obtained from *Pelargonium graveolens* which is a popular species of the geranium plant used in the production of geranium oil. Extraction of the oil can be performed by steam distillation or a cold-pressed process. A previous study of the chemical components in geranium oil by Ping *et al.* showed the presence of methylhexaneamine in geranium oil with a relative abundance of 0.66%.[7] This is the only such reference and is often quoted when referring to methylhexaneamine. It is apparent that few have read this paper critically!

A two-dimensional gas chromatography-mass spectrometry (GC-MS) study of *Pelargonium graveolens* essential oil by Shellie and Marriott identified 65 compounds.[8] Of the 65 compounds identified, none was found to correspond to methylhexaneamine. The authors of this study used a 30 m HP5 column for the first dimension and a temperature programme starting at 40°C. Under these conditions, the authors would have had no difficulty in observing methylhexaneamine, if it was present in the oil.

The aim of this short paper is to determine the presence/absence of methylhexaneamine in a selection of geranium oils by GC-MS compared to authentic standard. Geranium oils from companies which had been extracted from various species by cold-pressing or steam distillation procedures were purchased. It should be noted that methylhexaneamine is a volatile substance and is likely to have been lost through a steam distillation extraction, so cold-pressed material had the best chance of retaining this compound. The products used are shown in Table 1. A further product – Kaloba root

* Correspondence to: Angelo Lisi, National Measurement Institute, 1 Suakin St., Pymble NSW 2073, Australia. E-mail: angelo.lisi@measurement.gov.au

National Measurement Institute, Pymble, NSW, Australia

Case 2:12-cv-05424-JAK-MAN   Document 1   Filed 06/21/12   Page 35 of 42   Page ID #:35
Drug Testing and Analysis
A. Lisi *et al.*

| Table 1. Geranium products studied | | | |
|---|---|---|---|
| Oils Analyzed | Manufacturer | Extraction process | Origin |
| Rose geranium oil | Sydney Essential Oil Co | Steam-distilled | France |
| Certified Organic Geranium Oil | Sydney Essential Oil Co | Steam-distilled | Egypt |
| Bourbon Geranium Oil | Sydney Essential Oil Co | Steam-distilled | Egypt |
| Geranium Oil | Sacred Essence | Cold-pressed | Egypt |
| Kaloba EPs 7630 Liquid | - | Ethanol extract | New Zealand |

extract (from *Pelargonium sidoides*) obtained from New Zealand (via Drug Free Sport New Zealand) – was also studied, as it, too, was claimed to possibly contain methylhexaneamine.

Other supplements with stimulants as an ingredient were also studied in order to identify the main component. One of these supplements, Phenadrine, was used for an administration study as it contained both methylhexaneamine and phenpromethamine.

## Experimental

### Chemicals

Geranium oils were obtained from the manufacturers (Table 1) via Internet purchases. Methylhexaneamine (1,3-dimethylpentylamine), pentafluorbenzylchloride (PFBCL), and R(+)-α-methylbenzylamine were purchased from Sigma Aldrich (Castle Hill, NSW, Australia). t-Butylmethyl ether (TBME) and hexane were purchased from Merck (Kilsyth, Victoria, Australia), and ethyl acetate from Mallinckrodt Chemicals (Mulgrave, Victoria, Australia). The supplements Adrenaline, Lipo 6 Black, Bang, and Phenadrine were obtained from Bodybuilding.com via Internet sales.

### Analytical method

To the geranium oil or supplement (1 ml or 1 g) in a screw cap test tube was added 1 ml of 1 M hydrochloric acid, 100 µl of a solution of diphenylamine in methanol (100 µg/ml) and 5 ml of TBME. As a quality control, a further 1 ml aliquot of each oil was spiked with 200 µl of methylhexaneamine in methanol (100 µg/ml) and treated the same way. The mix was shaken on a rotary mixer for 30 min then centrifuged for 5 min. The TBME layer was discarded and the aqueous layer extracted twice more with TBME. To the resulting water layer was added an internal standard R(+)-α-methylbenzylamine (15 µg/ml), 300 µl of 6 M potassium hydroxide, 5 ml hexane and 2 µl of PFBCL. After shaking for 20 min and separation of the layers, the hexane layer was removed and evaporated to dryness. The residue was reconstituted with 200 µl of ethyl acetate and analysed by GC-MS in full-scan mode.

The analysis were conducted on a Agilent 6890 GC system coupled to 5973 MSD with an Agilent HP Ultra 2 (17 m x 0.2 cm x 0.25 µm) column with a 2 µl injection (split ratio 8:1). The injector temperature was set to at 260 °C with 15.0 psi column pressure and the temperature program from 87 °C (1.5 min delay) to 160 °C at 20 °C/min then to 310 °C at 35 °C/min and held for 1.0 min. The mass spectrum was obtained in full scan mode from $m/z$ 40 to 500 for confirmation with the use of $m/z$ 238 for the semi-quantitative measurement of methylhexaneamine.

## Administration study

The single oral administration of Phenadrine was carried out on a single volunteer with ethics approval from Southern Cross University. One capsule of the supplement was ingested and urine samples were collected between 0 and 29 h post-administration on an as-needed basis. The urine samples (5 ml) were made basic with 500 µl 6 M potassium hydroxide, and samples of 3-methyldiphenylamine and diphenylamine, 2.5 ml of t-butylmethyl ether and 2 g of anhydrous sodium sulfate were added and the mixture shaken for 20 min. After centrifugation, the upper layer was removed and analyzed by GC/NPD using an Agilent 689 GC with an Agilent HP Ultra 2 (17 m x 0.2 cm x 0.25 µm) column with a 2 µl injection (split ratio 5:1) and constant flow of 2.5 ml/min of helium, detector temperature 300 °C and injector temperature 260 °C and using a temperature programme: initial temperature 65 °C then programme at 40 °C /min to 310 then held at 310 °C for 1.5 min. The samples were also subjected to the confirmation method similar to that described above and analyzed by GC-MS as pentafluorobenzyl derivatives. Semi-quantitative results were obtained by direct comparison to responses from calibration curves of standards using a routine GC/NPD procedure on urine extracts.

## Results and discussion

### Geranium oils

The analysis of the GC-MS and GC/NPD traces obtained from the geranium oils and the Kaloba root extract did not show the presence of any methylhexaneamine whereas the spiked traces showed good recovery of this substance. The trace (TIC) for the geranium oil extract spiked with methylhexaneamine is shown in Figure 1 and both enantiomers are clearly present. The spectrum for the derivatives of methylhexaneamine is shown in Figure 2; Figure 3 compares chromatograms from an oil sample spiked the methylhexaneamine to one of the geranium oils in this study.



**Figure 1.** Full scan TIC of certified organic geranium oil spiked with methylhexaneamine. Peak A: Internal Standard, Peaks B: and C: the two isomers of methylhexaneamine.

EXHIBIT D

Copyright © 2011 John Wiley & Sons, Ltd.

Studies of Stimulants in supplements



**Figure 2.** Mass spectrum of the pentafluorobenzoyl derivative of methylhexaneamine.

Methylhexaneamine was not found in any of the geranium oils described in Table 1. Inspection of the report by Ping *et al.* also clearly shows that their identification was incorrect or possibly incorrectly translated.[7] The table of components in Ping *et al.* shows compounds 30 and 31 (the latest eluting peaks from their chromatogram) as 2-hexanamide,4-methyl and 2-hexanamide, 5-methyl.[7] However, the Chinese translation has these as 4-methyl-2-hexanamine, and 5-methyl-2-hexanamine. This trace also has the compounds eluting late in the chromatogram whereas methylhexaneamine is very volatile and elutes very early requiring low GC starting temperatures which is inconsistent with

this publication. Considering that the researchers simply ran the chromatogram then library searched each peak and presumably reported the best match without analysis of any standards, their assignments of structure are dubious. The spectrum of methylhexaneamine itself consists mainly of one ion *m/z* 44. Since very many substances possess a spectrum similar to this and this ion is of poor diagnostic value, it is reasonable to assert that the assignment was incorrect. The paper also performs quantification based on the TIC integration without calibration to any standards so their quantitative values will also have a very large uncertainty.



**Figure 3.** Extracted ion chromatograms for *m/z* 238 showing methylhexaneamine as the pentafluorobenzoyl derivative in a spike oil sample (A) compared to a certified organic geranium oil (B).

*Drug Test. Analysis* (2011)          Copyright © 2011 John Wiley & Sons, Ltd.          wileyonlinelibrary.com/journal/dta

Drug Testing
and Analysis

Case 2:12-cv-05424-JAK-MAN   Document 1   Filed 06/21/12   Page 37 of 42   Page ID #:37
A. Lisi et al.



**Figure 4.** Methylhexaneamine urinary concentration profile over 29 hour excretion study, GC-NPD using a 4-point calibration at 2, 4, 8 and 12 ug/mL.

## Supplements

Four supplements – Adrenaline, Bang, Lipo 6 Black, and Phenadrine – were analyzed and the stimulant ingredients were identified as methylhexaneamine (in Adrenaline), caffeine (in Bang), α and β-phenethylamine (in Lipo 6 Black), and methylhexaneamine and phenpromethamine (in Phenadrine). This is interesting, considering that the labels indicated they had mixtures of all these ingredients!

The excretion study for the supplement Phenadrine was undertaken to provide an excretion urine set for methylhexaneamine. Methylhexaneamine is easily detected as the parent compound in the urine and Figure 4 gives the time course for the excretion of a single subject over a 29-h period. The concentration of methylhexaneamine is not corrected for specific gravity but the data shows that it remains very high for more than 29 h (>3 ug/ml) which would allow it to be detected for several days if values above 50 ng/ml are reported.

## Conclusion

These studies as well as closer scrutiny of the original publication by Ping et al.[7] show that geranium oils do not contain methylhexaneamine and the use of the name Geranamine for this compound appears to have been a marketing ploy which has resulted in a large number of athletes returning adverse findings. The excretion of methylhexaneamine occurs over an extended period with high levels still occurring after 29 h.

Other stimulants used in supplements can also cause adverse findings and the status of compounds such as α and β-phenethylamine as doping agents needs to be determined.

## Acknowledgements

Investigations into metabolism and detection in urine of new designer steroids found in supplements are supported by the Australian Government through the Anti-Doping Research Program of the Department of Prime Minister and Cabinet. We thank Drug Free Sport New Zealand for assistance in obtaining Kaloba.

## References

[1] Martindale: The Complete Drug Reference, MedicinesComplete Browser [Version 1.1.1707.18094], The Pharmaceutical Press Software, 2004.
[2] WADA. Prohibited list. Available at: http://www.wada-ama.org/en/World-Anti-Doping-Program/Sports-and-Anti-Doping-Organizations/International-Standards/Prohibited-List/The-2011-Prohibited-List/ [July 2011].
[3] WADA. Laboratory Statistics. Available at: http://www.wada-ama.org/Documents/Resources/Statistics/Laboratory_Statistics/WADA_2010_Laboratory_Statistics_Report.pdf [29 November 2011].
[4] L. Perrenoud, M. Saugy, C. Saudan. Detection in urine of 4-methyl-2-hexaneamine, a doping agent. J. Chromatogr. B 2009, 877, 3767.
[5] M. Thevis, G. Sigmund, H. Geyer, W. Schanzer. Stimulants and doping in sport. Endocrinol. Metab. Clin. 2010, 39, 90.
[6] WADA. Explanatory notes. Available at: http://www.wada-ama.org/Documents/World_Anti-Doping_Program/WADP-Prohibited-list/To_be_effective/WADA_Explanatory_Notes_Prohibited_List_EN.pdf [July 2011].
[7] Z. Ping, Q. Jun, L. Qing. A Study on the Chemical Constituents of Geranium Oil. Journal of Guizhou Institute of Technology 1996, 25, 82.
[8] R. Shellie, P. Marriott. Comprehensive two-dimensional gas chromatography-mass spectrometry analysis of Pelargonium graveolens essential oil using rapid scanning quadrupole mass spectrometry. Analyst 2003, 128, 879.

EXHIBIT D

Copyright © 2011 John Wiley & Sons, Ltd.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Mariana P. Pfaelzer and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

## CV12- 5424 MRP (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

The United States District Judge assigned to this case will review all filed discovery motions and thereafter, on a case-by-case or motion-by-motion basis, may refer discovery related motions to the Magistrate Judge for hearing and determination

==================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)     NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

COPY

Name & Address:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

CHRISTOPHER TAROMINA, ALISON BURMEISTER, individually and on behalf of all others similarly situated,

PLAINTIFF(S)

v.

GASPARI NUTRITION, INC., and DOES 1 through 10, inclusive, *a New Jersey Corporation*.

DEFENDANT(S)

CASE NUMBER

CV12-5424-MAP(MAN)

SUMMONS

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Peter J. Farnese _____, whose address is Beshada Farnese LLP, 1999 Avenue of the Stars, Suite 1100, Los Angeles, CA, 90067 ____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __JUN 21 2012__

By: _____

MARILYN D

Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

ORIGINAL

Name & Address:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

CHRISTOPHER TAROMINA, ALISON
BURMEISTER, individually and on behalf of all
others similarly situated,

**PLAINTIFF(S)**

v.

GASPARI NUTRITION, INC., and DOES 1 through
10, inclusive, a New Jersey Corporation

**DEFENDANT(S).**

CASE NUMBER

CV 12-5424 -MRP(MANx)

**SUMMONS**

FAXED

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Peter J. Farnese_____, whose address is _Beshada Farnese LLP, 1999 Avenue of the Stars, Suite 1100, Los Angeles, CA, 90067_.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:    JUN 2 1 2012

By: _____
         Deputy Clerk

         *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                                SUMMONS

COPY

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself □) | DEFENDANTS |
|---|---|
| CHRISTOPHER TAROMINA, ALISON BURMEISTER, individually and on behalf of all other similarly situated | GASPARI NUTRITION, INC., a New Jersey Corporation, and DOES 1 through 10, inclusive. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| BESHADA FARNESE LLP<br>1999 Avenue of the Stars, Suite 1100, Los Angeles, California, 90067<br>Tel: 310-356-4668 | Matthew X. Oster, Esq.<br>MCDERMOTT, WILL & EMERY LLP<br>2049 Century Park East, 38th Floor, Los Angeles, California, 90067<br>Tel: 310-277-4110 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

□ 1 U.S. Government Plaintiff    □ 3 Federal Question (U.S. Government Not a Party)

□ 2 U.S. Government Defendant    ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | □ 1 | Incorporated or Principal Place of Business in this State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | ☑ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding    □ 2 Removed from State Court    □ 3 Remanded from Appellate Court    □ 4 Reinstated or Reopened    □ 5 Transferred from another district (specify):    □ 6 Multi-District Litigation    □ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes  □ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes  □ No    ☑ **MONEY DEMANDED IN COMPLAINT:** $ Greater than $5 million

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. 1332; Consumer class action alleging fraud, violation of New Jersey Consumer Fraud Act, Cal. Bus. & Prof. Code sections 17200, 17500

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| □ 400 State Reapportionment | □ 110 Insurance | □ 310 Airplane | ☑ 370 Other Fraud | □ 510 Motions to Vacate Sentence Habeas Corpus | □ 710 Fair Labor Standards Act |
| □ 410 Antitrust | □ 120 Marine | □ 315 Airplane Product Liability | □ 371 Truth in Lending | □ 530 General | □ 720 Labor/Mgmt. Relations |
| □ 430 Banks and Banking | □ 130 Miller Act | □ 320 Assault, Libel & Slander | □ 380 Other Personal Property Damage | □ 535 Death Penalty | □ 730 Labor/Mgmt. Reporting & Disclosure Act |
| □ 450 Commerce/ICC Rates/etc. | □ 140 Negotiable Instrument | □ 330 Fed. Employers' Liability | □ 385 Property Damage Product Liability | □ 540 Mandamus/ Other | □ 740 Railway Labor Act |
| □ 460 Deportation | □ 150 Recovery of Overpayment & Enforcement of Judgment | □ 340 Marine | **BANKRUPTCY** | □ 550 Civil Rights | □ 790 Other Labor Litigation |
| □ 470 Racketeer Influenced and Corrupt Organizations | □ 151 Medicare Act | □ 345 Marine Product Liability | □ 422 Appeal 28 USC 158 | □ 555 Prison Condition | □ 791 Empl. Ret. Inc. Security Act |
| □ 480 Consumer Credit | □ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | □ 350 Motor Vehicle | □ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| □ 490 Cable/Sat TV | | □ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | □ 610 Agriculture | □ 820 Copyrights |
| □ 810 Selective Service | □ 153 Recovery of Overpayment of Veteran's Benefits | □ 360 Other Personal Injury | □ 441 Voting | □ 620 Other Food & Drug | □ 830 Patent |
| □ 850 Securities/Commodities/ Exchange | □ 160 Stockholders' Suits | □ 362 Personal Injury-Med Malpractice | □ 442 Employment | □ 625 Drug Related Seizure of Property 21 USC 881 | □ 840 Trademark |
| □ 875 Customer Challenge 12 USC 3410 | □ 190 Other Contract | □ 365 Personal Injury-Product Liability | □ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| □ 890 Other Statutory Actions | □ 195 Contract Product Liability | □ 368 Asbestos Personal Injury Product Liability | □ 444 Welfare | □ 630 Liquor Laws | □ 861 HIA (1395ff) |
| □ 891 Agricultural Act | □ 196 Franchise | | □ 445 American with Disabilities - Employment | □ 640 R.R. & Truck | □ 862 Black Lung (923) |
| □ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | | □ 650 Airline Regs | □ 863 DIWC/DIWW (405(g)) |
| □ 893 Environmental Matters | □ 210 Land Condemnation | □ 462 Naturalization Application | □ 446 American with Disabilities - Other | □ 660 Occupational Safety /Health | □ 864 SSID Title XVI |
| □ 894 Energy Allocation Act | □ 220 Foreclosure | □ 463 Habeas Corpus-Alien Detainee | □ 440 Other Civil Rights | □ 690 Other | □ 865 RSI (405(g)) |
| □ 895 Freedom of Info. Act | □ 230 Rent Lease & Ejectment | □ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| □ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | □ 240 Torts to Land | | | | □ 870 Taxes (U.S. Plaintiff or Defendant) |
| □ 950 Constitutionality of State Statutes | □ 245 Tort Product Liability | | | | □ 871 IRS-Third Party 26 USC 7609 |
| | □ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number:   **CV12-5424**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
　　　　　　　　　　　　　☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
　　　　　　　　　　　　　☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
　　　　　　　　　　　　　☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County (Plaintiff Burmeister) | New Jersey (Plaintiff Taromina) |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | New Jersey (Defendant Gaspari Nutrition Inc.) |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
　　Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County (Plaintiff Burmeister) | New Jersey (Plaintiff Taromina) |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____　Date June 21, 2012

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |