**BESHADA FARNESE LLP**
Peter J. Farnese (SBN 251204)
pjf@beshadafarneselaw.com
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067
Telephone:  310-356-4668
Facsimile:   310-356-4601

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER TAROMINA, ALISON BURMEISTER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GASPARI NUTRITION, INC., a New Jersey Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.  CV12-05424 JAK (MANx)<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge:      Hon. John A. Kronstadt<br>Crtrm:     750<br>Date:       November 26, 2012<br>Time:      8:30 a.m.<br><br>Complaint Filed:   June 21, 2012<br>Trial Date:             (None Set) |

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

INTRODUCTION ................................................................... 1

I.     SUMMARY OF THE LITIGATION ...................................... 2

    A. Plaintiffs' Claims .......................................................... 2

    B. Plaintiffs' Investigation of Spirodex .............................. 4

    C. The Settlement Discussions ........................................... 4

II.    THE PROPOSED SETTLEMENT .......................................... 5

    A. The Settlement Class ..................................................... 5

    B. The Settlement Consideration ........................................ 5

        1. Injunctive Relief ........................................................ 5

        2. Cash Refund ............................................................. 6

    C.    Release by Class .......................................................... 6

    D.    Notice to Class and Claims Process ................................ 6

        1. Notice by Publication ................................................ 6

        2. The Short and Long Form Notices .......................... 7

        3. Settlement Website and Toll-Free Telephone Support ........... 7

    E. Costs of Administration, Attorneys' Fees and Costs and

       Service Payments to Class Representatives .......................... 8

III.    PROPOSED SCHEDULE OF EVENTS ................................. 9

IV.    ARGUMENT .................................................................... 9

    A.    THE SETTLEMENT MERITS PRELIMINARY

        APPROVAL ............................................................. 11

        1. The Settlement is the Result of a Thorough, Rigorous,

          and Arm's Length Process ..................................... 11

        2. The Settlement is Within the Range of Reasonableness ....... 12

B.    THE COURT SHOULD PRELIMINARILY CERTIFY

THE SETTLEMENT CLASS ........................................................ 15

1. The Settlement Class Satisfies the Requirements of

Federal Rule of Civil Procedure 23(a) ................................. 15

a. Numerosity ........................................................................ 15

b. Commonality .................................................................... 16

c. Typicality .......................................................................... 17

d. Adequacy of Representation ............................................ 18

2. The Settlement Class Meets the Requirements of

Federal Rule of Civil Procedure 23(b)(3) ............................ 19

a. Common Questions Predominate Over Individual Issues. 19

b. A Class Action is the Superior Method to Settle

This Controversy .............................................................. 20

C.    THE PROPOSED FORM AND METHOD OF CLASS

NOTICE SHOULD BE APPROVED ........................................... 21

V.    CONCLUSION ..................................................................................... 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**CASES**

4

*Alberto v. GMRI, Inc.,*
    252 F.R.D. 652 ................................................................................................ 10

5

6

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) .............................................................................. 15, 21

7

*Churchill Village, LLC v. Gen. Elec.,*
    361 F3d 566 (9th Cir. 2004) ........................................................... 9, 13, 21

8

9

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ....................................................................... 10

10

*Clemens v. DaimlerChrysler Corp.,*
    534 F.3d 1017 (9th Cir. 2008) ..................................................................... 17

11

12

*Committee on Children's Television, Inc. v. General Foods Corp.,*
    35 Cal.3d 197 (1983) ..................................................................................... 14

13

*Deposit Guar. Nat'l Bank v. Roper,*
    445 U. S. 326 (1980) ...................................................................................... 21

14

15

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) ....................................................................................... 21

16

*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15 (N.D. Cal. 1980) ..................................................................... 11

17

18

*Gen. Tel. Co. of Southwest v. Falcon,*
    457 U.S. 147 (1982) ............................................................................... 19, 20

19

*Hammer v. Vital Pharms., Inc.,*
    2012 U.S. Dist. LEXIS 40632 (D.N.J. March 26, 2012) ......................... 14

20

21

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ........................................................................ 18

22

*Hanlon v. Chrysler Corp.,*
    150 F. 3d 1011 (9th Cir. 1998) ..................................... 11, 12, 16, 17, 18, 19, 21

23

24

*Harris v. Palm Springs Alpine Estates, Inc.,*
    329 F.2d 909 (9th Cir. 1964) ........................................................................ 16

25

*In Re Emulex Corp. Sec. Litig.,*
    210 F.R.D. 717 (C.D. Cal. 2002) ................................................................. 18

26

27

*In Re First Alliance Mortg., Co.,*
    471 F.3d 977 (9th Cir. 2006) ........................................................................ 16

28

iii

BESHADA
FARNESE LLP

*In Re Mercury Interactive Corp. Sec. Litig.,*
   618 F.3d 988 (9th Cir. 2010) .................................................................. 9

*In Re Mego Fin. Corp. Sec. Litig.,*
   213 F.3d 454 (9th Cir. 2000) .................................................................. 10

*In re Omnivision Techs., Inc.,*
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................ 11

*In Re Pacific Enter. Sec. Litig.,*
   47 F.3d 373 (9th Cir. 1995) .................................................................... 9

*In Re Steroid Hormone Product Cases,*
   181 Cal.App.4th 145 (2010) ............................................................ 16, 17

*In Re Tableware Antitrust Litig.,*
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................ 10

*In Re Tobacco II Cases,*
   46 Cal.4th 298 (2009) ...................................................................... 16, 17

*In Re Warner Commc'ns Sec. Litig.,*
   618 F. Supp. 735 (S.D.N.Y. 1985) ........................................................ 12

*Johnson v. General Mills, Inc.,*
   2011 U.S. Dist. LEXIS 45120 (C.D. Cal April 20, 2011) ...................... 16

*Korea Supply Co. v. Lockheed Martin Corp.,*
   29 Cal.4th 1134 (2003) .......................................................................... 13

*Lee v. Carter-Reed Co., L.L.C.,*
   203 N.J. 496 (2010) ............................................................................... 17

*Local Joint Exec. Bd. Of Culinary/Bartender*
*Trust Fund v. Las Vegas Sands, Inc.,*
   244 F.3d 1152 (9th Cir. 2001) ............................................................... 19

*Mass. Mut. Life Ins. Co. v. Superior Court,*
   97 Cal.App.4th 1282 ............................................................................. 17

*McAdams v. Monier, Inc.,*
   182 Cal.App.4th 174 (2010) .................................................................. 17

*Mendoza v. Tucson Sch. Dist. No. 1,*
   623 F.2d 1338 (9th Cir. 1980) ............................................................... 21

*Mullane v. Cent. Hanover Bank & Trust Co,*
   339 U. S. 306 (1950) .............................................................................. 21

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,*
   221 F.R.D. 523 (C.D. Cal. 2004) ........................................................... 11

*Officers for Justice v. Civil Serv. Comm'n,*
   688 F.2d 615, 625 (9th Cir. 1982) ......................................................... 11

*Park v. Cytodyne Tech., Inc.*,
     2003 WL 21283814 (Cal. Sup. Ct. May 30, 2003) ................................. 13

*Shersher v. Sup. Ct.*,
     154 Cal.App.4th 1491 (2007) ................................................................. 13

*Stanton v. Boeing Co.*,
     327 F.3d 938 (9th Cir. 2003) ........................................................... 10, 18

*Torrisi v. Tucson Elec. Power Co.*,
     8 F.3d 1370(9th Cir. 1993) ....................................................................... 9

*Valentino v. Carter-Wallace, Inc.*,
     97 F.3d 1227 (9th Cir. 1996) ................................................................. 20

*Vasquez v. Coast Valley Roofing, Inc.*,
     670 F. Supp. 2d 1114 (E.D. Cal. 2009) ................................................. 10

*Vasquez v. Superior Court*,
     4 Cal.3d 800 (1971) ............................................................................... 21

*Wiener v. Dannon Co.*,
     255 F.R.D. 658 (C.D. Cal. 2009) ......................................................... 20

*Wolph v. Acer Am. Corp.*,
     2011 U.S. Dist LEXIS 35003 (N.D. Cal. Mar. 25, 2011) ...................... 17

*Zinser v. Accufix Research Inst., Inc.*,
     253 F.3d 1180 (9th Cir. 2001) ......................................................... 20, 21

**STATUTES**

Fed. R. Civ. P. 23(a) .................................................................... 13, 15

Fed. R. Civ. P. 23(b) .................................................................... 18, 20

Fed. R. Civ. P. 23(e) ............................................................................ 9

Fed. R. Civ. P. 23(h) ............................................................................ 9

**OTHER AUTHORITIES**

Fed. Prac. & Proc.,

     § 1777 ................................................................................................ 19

     § 1778 ................................................................................................ 19

Manual for Complex Litig. (Fourth) § 21.633 (2004) ....................... 11

Newberg on Class Actions § 11:25 (4th ed. 2002) ............................ 10

v

1

Newberg on Class Actions § 3.3 (4th ed. 2002) ................................................ 16

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Beshada
Farnese LLP

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

By this motion, Plaintiffs Christopher Taromina and Alison Burmeister ("Plaintiffs") seek (i) preliminary approval of an arms-length, stipulated class action settlement; (ii) provisional certification of the settlement class; (iii) appointment of class representative and class counsel; (iv) approval of the class notice and related settlement administration documents; (v) approval of the proposed class settlement administration deadlines; and (vi) a proposed final approval hearing date. Defendant Gaspari Nutrition, Inc. ("Defendant" or "Gaspari") does not oppose this motion.

## INTRODUCTION

This is a class action alleging that Gaspari engaged in unlawful and fraudulent business practices in connection with the sale and marketing of Gaspari's thermogenic sports nutrition product Spirodex ("Spirodex"). Plaintiff alleges that Gaspari: a) unlawfully included an illegal, "non-dietary ingredient" called DMAA in Spirodex; b) falsely advertised that the DMAA used in Spirodex was "natural" and derived from the geranium when, in fact, DMAA is not naturally occurring in geranium and must be synthetically produced; and c) failed to disclose that DMAA was associated with several adverse side effects. As set forth in the Plaintiff's Complaint (Docket No. 1), Plaintiff alleges that Gaspari's marketing and sale of Spirodex constituted unlawful, unfair, and fraudulent business practices in violation of the New Jersey Consumer Fraud Act ("NJCFA") N.J.S.A. Section 56:8-1, Cal. Bus. & Prof. C. §17200, et seq. ("UCL"), Cal. Bus. & Prof. C. §17500, et seq. ("FAL"), and common law fraud.

The parties engaged in lengthy and informed arms-length settlement negotiations beginning in late May 2012. The result of the negotiations is a fair compromise and is described in the Stipulation and Agreement of Settlement (the "Settlement Agreement") attached as Exhibit 1 to the Declaration of Peter J. Farnese ("Farnese Decl."). The proposed settlement achieves the primary purpose of this action, namely, an injunction stopping the sale and manufacture of Spirodex

- 1 -

1   containing DMAA.  In addition, Gaspari has agreed to refrain from adding DMAA
2   to any formulations of its future products.   In conjunction with this substantial
3   injunctive relief, the settlement provides cash refunds to class members who
4   purchased Spirodex, as well as payment of settlement notice and administration
5   costs, and Plaintiffs' attorney's fees and costs.[1]

6       As set forth in further detail below, the proposed settlement readily meets the
7   standard for preliminary approval. Thus, the Parties jointly request that the Court
8   enter the proposed preliminary approval order that, among other things: (1)
9   preliminarily approves the terms of the settlement; (2) approves the form, method
10  and plan of notice; (3) conditionally certifies the Class for settlement purposes; and
11  (4) schedules a Final Approval Hearing and related dates at which the request for
12  final approval of the proposed settlement and entry of the judgment will be
13  considered.

14  **I.      SUMMARY OF THE LITIGATION**

15      **A.      Plaintiff's Claims**

16      As set forth in the Plaintiffs' Complaint (Docket No. 1), Plaintiffs allege that
17  Gaspari's marketing and sale of the product Spirodex constituted unlawful, unfair,
18  and fraudulent business practices in violation of the New Jersey Consumer Fraud
19  Act ("NJCFA") N.J.S.A. Section 56:8-1, Cal. Bus. & Prof. C. §17200, et seq.
20  ("UCL"), Cal. Bus. & Prof. C. §17500, et seq. ("FAL"), and common law fraud.

21      Specifically, Plaintiffs allege that Gaspari markets Spirodex in the
22  diet/thermogenics category of sports nutrition products. Complaint at ¶15.  Gaspari
23  advertises Spirodex as a natural, dietary supplement that: "Increases thermogenesis
24  and resting metabolic rate"; "Enhances mood and energy levels"; "Ultra long
25  lasting and convenient, once-per-day dosing"; and "Enhances mental alertness and
26  focus." *Id.* at ¶16.

27  _____

28  [1]    All capitalized terms have the same meaning as set forth in the Settlement Agreement.

- 2 -

1       According to Gaspari's advertising,  "By using standardized herbal analogs
2   of the actual neurotransmitters found naturally in your Central Nervous System that
3   are responsible for pleasure, alertness and appetite suppression, SPIRODEX is
4   guaranteed to provide you with an intense feeling of mood enhancement, mental
5   clarity and energy; all in a convenient, once-per-day dose with absolutely no crash
6   or annoying 'hang over' effect." *Id.* at ¶16.

7       Gaspari bases these claims on the key ingredient in Spriodex's  "proprietary
8   blend" (i.e. Gaspari's "SPIROBLEND"), marketed by Gaspari as "*Geranium*
9   *maculatum extract* [leaves and stems] standardized for 4-methylhexan-2-amine."
10  *Id.* at ¶17. "4-methylhexan-2-amine" is actually a chemical compound known as
11  DMAA.  DMAA is also marketed in the sports nutrition industry under several
12  other chemical names, including 1, 3-dimethylamylamine, methylhexaneamine, 4-
13  methyl-2-hexanamine, 2-amino-4-methylhexane. *Id.* at ¶18.

14      Plaintiffs allege that Gaspari's statement that Spirodex contains "*Geranium*
15  *maculatum extract* [leaves and stems] standardized for 4-methylhexan-2-amine"
16  (hereafter "DMAA") is false and deceptive. *Id.* at ¶19.  In a November 2011 article
17  published in the journal *Drug Testing and Analysis*, researchers used gas
18  chromatography-mass  spectrometry ("GC-MS") testing to determine that
19  "geranium oils do not contain [DMAA] and that products labelled as containing
20  geranium oil but which contain [DMAA] can only arise from the addition of
21  synthetic material."  *Id.* at ¶20. In other words, Gaspari's claim that Spirodex
22  contains geranium extract consisting of DMAA is false and deceptive because
23  *DMAA is not present in geranium*. *Id.* at ¶21.

24      Plaintiffs allege that DMAA is a synthetic chemical compound which is not
25  naturally occurring. *Id.* at ¶22.  Because it is wholly synthetic, Plaintiffs allege that
26  DMAA is not a natural, dietary ingredient. *Id.*   Thus, Gaspari's marketing of
27  Spirodex as a "dietary supplement" is also false and deceptive. *Id.*

28      Finally, Plaintiffs allege that in a April 2012 warning letter sent to Gaspari

BESHADA
FARNESE LLP

and a nine other sports nutrition companies, the Food & Drug Administration ("FDA") advised Gaspari and others in the industry that DMAA does not meet the definition of a dietary ingredient under the federal Food, Drug & Cosmetic Act and cannot be sold as such without approval from the FDA. *Id.* at ¶23. In addition, the FDA stated that DMAA can have dangerous side effects. The FDA states that DMAA "narrows the blood vessels and arteries, which increases cardiovascular resistance and frequently leads to elevated blood pressure. This rise in blood pressure may increase the work of the heart such that it could precipitate a cardiovascular event, which could range from shortness of breath to tightening of the chest and/or a possible myocardial infarction (heart attack)." *Id.* at ¶24.

Thus, in addition to misrepresenting the nature of DMAA, Plaintiffs allege that Gaspari fails to advise consumers of the potential dangers of DMAA in a clear and conspicuous manner. *Id.* at ¶25.

**B.    Plaintiff's Investigation of Spirodex**

Plaintiff's counsel began investigating Spirodex in or about April 2012 after being contacted by Plaintiffs regarding the news release of the FDA's warning letters regarding Spirodex and other supplements containing DMAA. Farnese Dec. at ¶3. As detailed in the Declaration of Peter J. Farnese, Plaintiffs' Counsel conducted a significant factual investigation into the marketing and science of Spirodex. *See* Farnese Decl. at ¶¶8, 13-16. Class counsel confirmed the results of this investigation through the settlement discussions with counsel for Gaspari. *Id.*

**C.    The Settlement Discussions**

Beginning in late May 2012, the Parties commenced settlement discussions regarding Plaintiffs' allegations related to Spriodex. Farnese Decl. at ¶3. During the course of these arms-length negotiations, the Parties exchanged information informally, and evaluated the legal and factual merits of the claims and defenses. Plaintiffs eventually filed the complaint on June 21, 2012. *Id*. ¶7. The Parties continued their discussions following the filing of the complaint and agreed to a

- 4 -

settlement on a class-wide basis, filing a Notice of Settlement (Doc. No. 8) with the court on July 18, 2012. *Id*. ¶4.

The parties heavily negotiated every aspect of the proposed settlement over a period of approximately three months. *Id*. at ¶6. On October 11, 2012, the parties reached a final, written agreement and the settlement agreement was fully executed by October 15, 2012. *Id*. A true and correct copy of the Settlement Agreement is attached as Exhibit 1 to the Farnese Decl.

## II.     THE PROPOSED SETTLEMENT

### A.     The Settlement Class

The settlement class is defined as:

> All persons who purchased for personal consumption, and not for re-sale, Spirodex in the United States from four years prior to the date the Complaint was filed until the date of the Preliminary Approval Order.

*See* Settlement Agreement at I.U.

Because Spirodex was sold through distributors, Gaspari does not possess data as to the specific number of purchasers of Spirodex. Thus, it is difficult, if not impossible, to determine the exact number of persons in the Settlement Class. Based on historic sales data and customary usage of Spirodex, the Settlement Class is estimated to consist of several tens of thousands of persons, some of whom may have purchased and tried Spirodex only once.

### B.     The Settlement Consideration

The settlement provides substantial injunctive relief and cash refunds for members of the Settlement Class. *See* Settlement Agreement at III.1-2.

#### 1.     Injunctive Relief

The settlement achieves significant injunctive relief. With respect to Spirodex, Gaspari agrees that it will cease to manufacture, market, and sell Spirodex containing DMAA. *See* Settlement Agreement at III.2.a. In addition, Gaspari agrees that it will not include the ingredient DMAA in any of its current or

- 5 -

1   future product formulations which are marketed to consumers as dietary
2   supplements, unless Gaspari possesses competent and reliable scientific evidence
3   that DMAA meets the definition of a "dietary ingredient" pursuant to federal
4   Dietary Supplement Health and Education Act ("DSHEA") of 1994.   *See*
5   Settlement Agreement at III.2.b.

6                    **2.    Cash Refund**

7           Settlement Class Members who make a Valid Claim will be entitled to
8   reimbursement of nineteen dollars ($19.00) for each bottle of Spirodex purchased
9   for personal consumption during the Class Period, up to a maximum of three (3)
10  bottles of Spirodex (in the aggregate) per Person.   *See* Settlement Agreement at
11  III.2.a.

12          **C.    Release by Class**

13          Pursuant to the terms of the Settlement, Plaintiffs' and Class Members'
14  consideration is in the form of a release of the claims alleged, or that could have
15  been alleged, in this action.   *See* Settlement Agreement, section VII.B.  No personal
16  injury claims are released by the settlement.  *Id*.

17          **D.    Notice to Class and Claims Process**

18          The Parties have developed a notice program with Epiq Systems Inc.
19  ("Epiq"), a firm that specializes in developing class action notice plans and
20  administering class action settlements. Because Spirodex was sold through
21  distributors, Gaspari does not have customer lists or contact information for
22  Settlement Class members. Consequently, the notice program focuses on
23  disseminating notice through publication on the internet and in fitness magazines to
24  reach class members.

25                    **1.    Notice by Publication**

26          The notice plan is set forth in the Declaration of Cameron R. Azari, Esq.
27  ("Azari Decl.") filed concurrently herewith.  The parties, in consultation with Epiq,
28  have determined that individual notification to Class Members is not possible

- 6 -

because the Defendant sells the product primarily through distributors and maintains no direct contact data for the Class.  Because all class members cannot be notified personally, a multifaceted publication notice program has been developed including print, internet, social media, and the establishment of a settlement website.  Azari Decl. at ¶¶7-8.

In designing the publication notice plan, Epiq and the Parties considered that Spirodex is a bodybuilding supplement marketed to "niche" market of primarily male weightlifters. *Id.* at ¶11. In other words, Spirodex was not mass-marketed to a broad range of consumers. *Id.* Thus, for media planning purposes, a Notice Plan that is highly targeted with respect to the narrow market segment which Spirodex and similar sports nutrition products are marketed and sold is reasonable.  *Id.* at ¶12.

The short-form notice will appear nationwide via the magazines *Muscle & Fitness* and *Muscular Development*. *Id*. at ¶13. In addition, Epiq, in conjunction with the firm Digital Settlement, LLC, will disseminate the notice via various websites.  *Id.* ¶16.  The internet notice plan comprises: 1) website and informational ads; 2) social media (i.e. Facebook); and 3) online portal ads (i.e. google.com, yahoo.com, and youtube.com). *Id*. at ¶¶17-22.   A detailed report of the internet notice plan is attached to the Azari Decl. as Exhibit 2.

## 2.    The Short and Long Form Notices

The proposed forms of Notice are attached to the Settlement Agreement as Exhibits D and E. These notices were developed with the expertise of the Settlement Administrator, Epiq.  *See* Azari Decl. at ¶26.  The notices are designed to be in "plain language" in accordance with the Federal Judicial Center's guidelines. Azari Decl. at ¶¶26-27. The notices meet the requirements of the Federal Rules of Civil Procedure, and due process requirements. Azari Decl. at ¶27.

## 3.    Settlement Website and Toll-Free Telephone Support

Published notice will direct consumers to an Internet website dedicated to the

- 7 -

settlement and the claims process (www.spirodexsettlement.com), where consumers can review the long form notice, settlement documentation, and relevant court documents. The settlement website will be designed and maintained by Epiq. Azari Decl. at ¶23. Qualifying class members may then submit claims online, or request a form and submit a claim by mail. *Id.* In addition, Epiq will maintain a toll-free call-in number for the settlement where class members can obtain information about the settlement and obtain a paper claim form. *Id.* at ¶24.

### E.  Costs of Administration, Attorneys' Fees and Costs and Enhancement Payment to Class Representative

The Settlement Agreement provides that costs of administering the settlement will be paid by Gaspari. *See* Settlement Agreement at VI.A-B. Additionally, the Settlement Agreement outlines that Plaintiffs may request, and Gaspari will not oppose, an award of attorney's fees not to exceed $125,000 and costs up to $5,000. *See* Settlement Agreement at VI.C. Plaintiffs' Counsel submits that the attorney's fees requested are fair, reasonable, and adequate given the relief obtained on behalf of the class, the nature and the extent of Plaintiffs' Counsel's efforts. In accordance with federal procedure, Plaintiff will submit a detailed attorney fee application in connection with final approval of the settlement. *See* Farnese Decl. at ¶¶25-26.

Finally, the Settlement Agreement contains a provision that the Class Representatives may make an application to receive a service award in the amount of $2,500 for their services, efforts and risks on behalf of the Settlement Class. *See* Settlement Agreement at VI.D. Plaintiffs and Plaintiffs' counsel submit that such awards are fair, adequate and reasonable given Plaintiffs' involvement in the background investigation of Spirodex, the litigation, the settlement discussions, and the settlement relief that that Plaintiffs have achieved for the Class. *See* Farnese Decl. at ¶¶26-27.

III.   **PROPOSED SCHEDULE OF EVENTS**

Plaintiff respectfully proposes the following schedule of events for final approval of the settlement, should the Court grant preliminary approval on November 12, 2012:

| Event | Proposed Date |
|---|---|
| Publication Of Class Notice And Period For Claims, Opt-Outs, And Objections Begins | January 1, 2013 |
| Publication Of Class Notice Ends | January 31, 2013 |
| Briefs In Support Of Final Approval, Award Of Attorney's Fees And Costs, And Incentive Awards Due | February 15, 2013 |
| Period For Claims, Opt-Outs, And Objections Concludes | March 4, 2013 |
| Deadline To File Supplemental Brief And Responses To Objections | March 15, 2013 |
| Final Approval Hearing | March 25, 2013 |

This schedule complies with Fed. R. Civ. P. 23(h) and is similar to those used and approved by numerous courts in class action settlements and provides due process to Settlement Class Members with respect to their rights concerning the settlement. *See In re Mercury Interactive Corp. Sec Litig.,* 618 F.3d 988, 993-94 (9th Cir. 2010)(Plaintiff's final approval brief and request for attorney's fees should be filed prior to the objection deadline); and *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993).

V.   <u>**ARGUMENT**</u>

Settlements of complex class actions are strongly favored. *See Churchill Village, LLC v. Gen. Elec*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Rule 23(e) requires the Court to determine whether a proposed settlement is "fundamentally fair, adequate, and

- 9 -

reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1026). To make this determination, the Court considers a number of factors, including: (1) the strength of Plaintiffs' case; (2) "the risk, expense, complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See id.* (citations omitted). In addition, the settlement may not be the product of collusion among the negotiating parties. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)).

At the preliminary approval stage, the Court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible judicial approval" and thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate. *See* Newberg on Class Actions § 11:25 (4th ed. 2002) (citations omitted); *see also Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665-666 (E.D. Cal. 2008) (citation omitted). Preliminary approval of a settlement and notice to the proposed class is appropriate: "[i]f (1) the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment to class representatives or segments of the class, and (4) falls with the range of possible approval." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 2009 WL 3857428, at *7 (E.D. Cal. 2009) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). The preliminary approval process requires the Court to "make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement and date of the final

- 10 -

1  fairness hearing." Manual for Complex Litigation (Fourth), § 21.633, at 321 (2004).
2  At this stage, the Court's review is "limited to the extent necessary to reach a
3  reasoned judgment that the agreement is not the product of fraud or overreaching
4  by, or collusion between, the negotiating parties, and that the settlement, taken as a
5  whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v.*
6  *Civil Serv. Comm'n,*, 688 F.2d 615, 625 (9th Cir. 1982); *accord Hanlon v. Chrysler*
7  *Corp.,* 150 F. 3d 1011, 1027 (9th Cri. 1998).

8       Applying the standards set forth above, the Settlement should be
9  preliminarily approved.

10 **A.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL**

11      **1.   The Settlement Is the Result of a Thorough, Rigorous, and Arm's**
12           **Length Process**

13      The requirement that a settlement be fair is designed to protect against
14 collusion among the parties. *See Hanlon*, 150 F.3d at 1026. Typically, "[t]here is a
15 presumption of fairness when a proposed class settlement, which was negotiated at
16 arm's-length by counsel for the class, is presented for Court approval." Newberg on
17 Class Actions, § 11.41 (4th Ed. 2007); *Nat'l Rural Telecomm. Coop. v. DIRECTTV,*
18 *Inc.*, 221 F.R.D. 523, 528 (CD. Cal. 2004) ("'Great weight' is accorded to the
19 recommendation of counsel, who are the most closely acquainted with the facts of
20 the underlying litigation."); *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18
21 (N.D. Cal. 1980); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1043 (N.D.
22 Cal. 2008) ("The recommendations of plaintiffs' counsel should be given a
23 presumption of reasonableness." (internal quotation marks omitted)).

24      By the time the Parties' settlement discussions intensified in June 2012,
25 Plaintiffs and Plaintiffs' Counsel had completed a months-long investigation of
26 Spirodex, including consultation with science and regulatory consultants, and
27 verified the findings of that investigation through the voluntary exchange of
28 information with Gaspari.  During the course of the protracted negotiations, each

BESHADA
FARNESE LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

party considered, among other things, the risks and expenses of further litigation, the prospect of losing at class certification and/or on the merits, and the complexities associated with the present state of the law (including issues related to the concept of the class-wide presumption of reliance, preemption, injury-in-fact, and standing). *See* Farnese Decl. at ¶¶13-16.

Plaintiffs' Counsel also considered the benefits that the Settlement Agreement would convey to the class and the public, along with the present monetary value of the cash refunds to the class. Thus, Plaintiffs' Counsel, who are experienced in this type of class action litigation, had "a clear view of the strengths and weaknesses" of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. *See, e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985). The parties heavily negotiated every aspect of the proposed settlement for several months before a final settlement was achieved. Farnese Decl. ¶¶6-8. Thus, the proposed settlement is the product of serious, informed, non-collusive negotiations.

All of those factors dictate that the Settlement Agreement is the product of arms-length negotiations and is entitled to the presumption of fairness.

**2.     The Settlement is Within the Range of Reasonableness**

The proposed settlement is certainly within the range of possible approval. This reasonableness standard is informed by the concept that any "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

By providing the opportunity to claim a significant cash refund, as well as stopping the alleged unfair business practice, the proposed settlement has no obvious deficiencies and does not improperly grant preferential treatment to class representatives or segments of the class. The cash refunds will be distributed to

- 12 -

1    individual class members based on the number of units purchased, up to three
2    bottles. To obtain cash payment, class members need only fill out a simple,
3    straightforward claim form.

4         The amount of the cash payment is more than a fair compromise and actually
5    represents near full restitution on a per bottle basis to the Settlement Class.  Even if
6    Plaintiffs were ultimately successful in establishing liability, calculation of
7    restitution and damages would likely not amount to a return of the full purchase
8    price.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1149
9    (2003); *Shersher v. Sup. Ct.*, 154 Cal.App.4th 1491, 1498 (2007).  For instance, in
10   *Park v. Cytodyne Tech., Inc.*, 2003 WL 21283814, at *25 (Cal. Sup. Ct. May 30,
11   2003), a false advertising case involving a dietary supplement, a California trial
12   court explained that restitution "restor[es] only that which the defendant gained in
13   the transaction" and subsequently calculated restitution as the amount the defendant
14   received from distributors minus manufacturing costs. Here, restitution would
15   likely not be calculated as the amount of gross sales for Spirodex, but rather what
16   Gaspari actually received from distributors minus costs. *See Shersher*, 154
17   Cal.App.4th at 1498-1500; *Park*, 2003 WL 21283814, at *26.   As Plaintiffs'
18   Counsel's investigation revealed, because Gaspari sold Spirodex through
19   distributors, its actual "take" on each bottle was significantly less than the
20   suggested retail price.  *See* Farnese Decl. at ¶12.   Thus, the $19.00 per bottle
21   provided by the settlement is certainly a fair deal for the Class.

22        Furthermore, the fairness and adequacy of the Settlement is further
23   underscored by taking into account the obstacles the Settlement Class would face in
24   ultimately succeeding on the merits, as well as the expense and likely duration of
25   the litigation. *See Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th
26   Cir. 2004) (citing risk, expense, complexity, and likely duration of further litigation
27   as factors supporting final approval of settlement).

28        For instance, Plaintiffs would have to overcome several threshold legal issues

BESHADA
FARNESE LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

1    at the motion to dismiss stage.  Gaspari indicated that it would move to dismiss

2    Plaintiffs' complaint based on, among other things, the theory that Plaintiffs' claims

3    are preempted by the federal Food, Drug & Cosmetic Act ("FDCA") which defines

4    the term "dietary supplement."   While Plaintiffs disagree with this argument, one

5    federal court agrees with Gaspari's position that a consumer's claims of mislabeling

6    of product as a "dietary supplement" containing DMAA is not actionable under the

7    NJCFA.  *See Hammer v. Vital Pharms., Inc.*, Civ. Action No. 11-4124, 2012 U.S.

8    Dist. LEXIS 40632, at *17  (D.N.J. March 26, 2012)("Accordingly, the Court finds

9    that Plaintiff's claim, as it is currently pled, concerning the labeling of Clenbutrx as

10   a dietary supplement is not actionable under the NJCFA.").

11        Additionally, while Plaintiffs were confident that the labeling and advertising

12   of Spirodex presented a common misrepresentation to consumers that was

13   certifiable as a class on the basis of a presumption of "materiality" and reliance. For

14   instance, Plaintiffs learned that Gaspari was prepared to present evidence that

15   consumers of Spirodex (and bodybuilding supplements, in general) are

16   "sophisticated" consumers who through their own knowledge and research were not

17   "naive" as to the nature of the ingredients in Spirodex.  *See, e.g., Committee on*

18   *Children's Television, Inc. v. General Foods Corp*., 35 Cal. 3d 197 (1983)

19   (discussing advertising directed to particular groups). In other words, Gaspari

20   possessed multiple forms of evidence that could be utilized to rebut the

21   presumption of materiality and reliance necessary to certify the class.

22        Further, and as with any contested action, the proofs on the merits would,

23   too, be subject to significant scrutiny. In particular, Gaspari, as well as others in the

24   supplement industry, posses scientific substantiation allegedly supporting their

25   position that DMAA is found in geranium and is a "dietary ingredient," as well as

26   studies on DMAA's efficacy and safety.  While Plaintiffs raised some (and was

27   prepared to raise more) questions on the validity of those studies, there certainly

28   was no guarantee that the testimony of Plaintiffs' experts would have been accepted

- 14 -

over that from Gaspari and its experts. In other words, the case would have been reduced to a classic battle of the experts over both the fact and degree of the science. Again, while Plaintiffs are confident that their experts, ultimately, would be deemed believable and credible, the possibilities of a defense verdict were certainly real. If that did indeed occur, the class would be left with nothing.

Accordingly, in light of these issues, the settlement is a fair result and well within the range of reasonableness.

## B. THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

The Ninth Circuit recognizes the propriety of certifying a settlement Class to resolve consumer protection lawsuits. *Hanlon*, 150 F.3d at 1019. When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Federal Rule of Civil Procedure 23. *Id*. But, in assessing those certification requirements, a court may properly consider that there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

### 1. The Settlement Class Satisfies the Requirements of Federal Rule of Civil Procedure 23(a).

Rule 23(a) enumerates four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. The Parties agree that each of these requirements is met.

#### a. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a).   Here, the numerosity requirement is readily met because joinder of absent class members would be

- 15 -

1    exceedingly difficult. *See Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d
2    909, 913-14 (9th Cir. 1964). Based on sales and customary usage of the product, the
3    class here may comprise up to several thousand consumers. *See* Farnese Decl. at
4    ¶19; *see also* Newberg, § 3.3 (Where "the exact size of the class is unknown, but
5    general knowledge and common sense indicates that it is large, the numerosity
6    requirement is satisfied."). Accordingly, the numerosity requirement is met.

7                          **b.    Commonality**

8         "The existence of shared legal issues with divergent factual predicates is
9    sufficient [to satisfy commonality], as is a common core of salient facts coupled
10   with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019; *In re
11   First Alliance Mortg. Co*., 471 F.3d 977, 990-91 (9th Cir. 2006). The commonality
12   requirement is construed "permissively." *Hanlon*, 150 F.3d at 1019.

13        Here, Class members' claims necessarily involve common questions of law
14   and fact. Plaintiffs' allegations focus on advertising claims appearing on all of the
15   Product labels, print, and internet advertisements during the class period. Whether
16   the claim was true or false or unlawful presents a common, salient issue sufficient
17   to satisfy the Rule 23(a) commonality requirement. *See Johnson v. General Mills,
18   Inc*., CV 10-00061-CJC(ANx) 2011 U.S. Dist. LEXIS 45120 (C.D. Cal. April 20,
19   2011); *see also Steroid Hormone Product Cases,* 181 Cal. App. 4th 145 (2010) .

20        Individual issues of reliance on these representations do not defeat
21   certification Plaintiffs' claims because the reliance requirement does not apply to
22   absent class members under Plaintiff's UCL claim. *See In re Tobacco II Cases*, 46
23   Cal. 4th 298, 321, 326 (2009) (finding that Proposition 64 "was not intended to
24   have any effect at all on unnamed members of UCL  class actions"). Indeed, "relief
25   under the UCL is available without individualized proof of deception, reliance and
26   injury." *Id*. at 320; *see also In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th
27   145, 154 (2010) (explaining that once the named plaintiff meets standing
28   requirements "no further individualized proof of injury or causation is required to

- 16 -

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

1    impose restitution liability [under the UCL] against the defendant in favor of absent

2    class members"); *see also Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496, 527 (2010)

3    (noting that under the NJCFA, a proposed class of dietary supplement purchasers

4    presented "the quintessential example of facts and circumstances that would

5    support class-wide relief" (citations omitted)).

6         Similarly, Plaintiffs' fraud claims are also appropriate for certification when,

7    as here, the "record permits an 'inference of common reliance' to the class*."*

8    *McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174, 183 (2010) (quoting *Mass. Mut.*

9    *Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1293, 119 Cal. Rptr. 2d 190

10   (2002)). A representation is material "if a reasonable man would attach importance

11   to its existence or nonexistence in determining his choice of action in the

12   transaction in question." *In re Tobacco II Cases*, 46 Cal. 4th at 327 (internal

13   quotation marks omitted); *see also Clemens v. DaimlerChrysler Corp.*, 534 F.3d

14   1017, 1025 (9th Cir. 2008) (explaining that a concealed fact is "material" under the

15   UCL if reasonable consumers are likely to be deceived). This "objective standard . .

16   . is susceptible to common proof." *Wolph v. Acer Am. Corp.*, F.R.D. , No. C 09-

17   01314 JSW, 2011 U.S. Dist. LEXIS 35003, 2011 WL 1110754, at *9 (N.D. Cal.

18   Mar. 25, 2011). And materiality is generally a question of fact for the jury. *In re*

19   *Tobacco II Cases*, 46 Cal. 4th at 327.

20        Accordingly, the commonality requirement is satisfied.

21              **c.    Typicality**

22        Rule 23(a)(3) typicality is satisfied where the Plaintiffs' claims are

23   "reasonably co-extensive" with absent Class members' claims; they need not be

24   "substantially identical." *Hanlon*, 150 F.3d at 1020. The test for typicality "is

25   whether other members have the same or similar injury, whether the action is based

26   on conduct which is not unique to the named Plaintiffs, and whether other class

27   members have been injured by the same course of conduct." *Hanon v.*

28   *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Thus, "[t]he purpose of the

BESHADA
FARNESE LLP

1  typicality requirement is to assure that the interest of the named representative
2  aligns with the interests of the class." *Id*.

3        Here, Plaintiffs, like other reasonable consumers, purchased Spirodex in
4  reliance on the contents of the label and the Spirodex advertising claims that
5  Spirodex was an all-natural dietary supplement that did not contain any synthetic
6  ingredients, synthetic products, "non-dietary" ingredients, or drugs and did not have
7  any negative side effects.    Complaint at ¶¶56-57.     Plaintiffs would not have
8  purchased Spirodex if they knew that Spirodex contained non-dietary ingredients,
9  which were not naturally-occurring, and not DSHEA-compliant.    *Id*. In sum,
10  Plaintiffs' claims are typical.

11                **d.    Adequacy of Representation**

12        Rule 23(a)(4) requires that "the representative parties will fairly and
13  adequately protect the interests of the class." Adequacy is satisfied where (i)
14  counsel for the class is qualified and competent to vigorously prosecute the action,
15  and (ii) the interests of the proposed class representatives are not antagonistic to the
16  interests of the Class. *See, e.g., Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003);
17  *Hanlon*, 150 F.3d at 1020.

18        The adequacy requirement is met here. First, the proposed Class Counsel are
19  qualified and experienced in conducting class action litigation. *See* Farnese Decl. at
20  ¶¶21-24.    Further, proposed Class Counsel have thoroughly and efficiently
21  identified and investigated the claims in this lawsuit and that the facts that support
22  those claims. *See In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (CD. Cal.
23  2002) (a court evaluating adequacy of Counsels' representation may examine "the
24  attorneys' professional qualifications, skill, experience, and resources . . . [and] the
25  attorneys' demonstrated performance in the suit itself). Second, there is no conflict
26  of interest between Plaintiffs' interests and the interests of the Class members.  *See*
27  Compl. at ¶¶56-57, 61; Farnese Decl. at ¶¶17, 27  The adequacy requirement is met.

28

BESHADA
FARNESE LLP

1
2

**2.      The Settlement Class Meets the Requirements of Federal Rule of Civil Procedure 23(b)(3).**

3        Plaintiffs seek certification of a settlement Class under Rule 23(b)(3).

4  Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of

5  the parties can be served best by settling their difference in a single action."

6  *Hanlon*, 150 F.3d at 1022 (quoting, Fed. Prac. & Proc. § 1777 (2d ed. 1986)). There

7  are two fundamental conditions to certification under Rule 23(b)(3): (1) questions

8  of law or fact common to the members of the class predominate over any questions

9  affecting only individual members; and (2) a class action is superior to other

10  available methods for the fair and efficient adjudication of the controversy. Fed. R.

11  Civ. P. 23(b)(3); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las*

12  *Vegas Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir. 2001); *Hanlon*, 150 F.3d at

13  1022.    Rule 23(b)(3) encompasses those cases "in which a class action would

14  achieve economies of time, effort, and expense, and promote … uniformity of

15  decision as to persons similarly situated, without sacrificing procedural fairness or

16  bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (citations

17  omitted and alterations in original);

18                **a.      Common Questions Predominate Over Individual Issues**

19        The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are

20  sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S.

21  at 623. "Predominance is a test readily met in certain cases alleging consumer . . .

22  fraud . . . ." *Id.* "When common questions present a significant aspect of the case

23  and they can be resolved for all members of the class in a single adjudication, there

24  is clear justification for handling the dispute on a representative rather than on an

25  individual basis." Fed. Prac. & Proc., § 1778; *Gen. Tel. Co. of Southwest v. Falcon*,

26  457 U.S. 147, 157 n.13 (1982) (noting that commonality and typicality tend to

27  merge).

28        Here, the common issue that predominates is whether Gaspari's packaging,

- 19 -

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1 labeling and marketing communicated persistent and material messages that

2 Spirodex contains, natural, legal, DSHEA-compliant ingredients, and are safe.  *See*

3 *Wiener v. Dannon Co.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009) (finding that, even if

4 consumers were exposed to a mix of the defendant's marketing efforts, "the record

5 clearly establishe[d] that [the defendant]'s alleged misrepresentations regarding the

6 clinically proven health benefits of the [yogurt] [were] prominently displayed on all

7 of the [yogurt]'s packaging, a fact that [the defendant] ha[d] never contested").  As

8 such, common questions predominate.

9       **b.    A Class Action is the Superior Method to Settle This**

10            **Controversy**

11      Rule 23(b)(3) sets forth the relevant factors for determining whether a class

12 action is superior to other available methods for the fair and efficient adjudication

13 of the controversy. These factors include: (i) the class members' interest in

14 individually controlling separate actions; (ii) the extent and nature of any litigation

15 concerning the controversy already begun by or against class members; (iii) the

16 desirability or undesirability of concentrating the litigation of the claims in the

17 particular forum; and (iv) the likely difficulties in managing a class action. Fed. R.

18 Civ. P. 23(b)(3); see *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1190-92

19 (9th Cir. 2001). "[C]onsideration of these factors requires the court to focus on the

20 efficiency and economy elements of the class action so that cases allowed under

21 subdivision (b)(3) are those that can be adjudicated most profitably on a

22 representative basis." *Zinser*, 253 F.3d at 1190 (citations omitted); *see also*

23 *Valentino v. Carter-Wallace*, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (finding the

24 superiority requirement may be satisfied where granting class certification "will

25 reduce litigation costs and promote greater efficiency").

26      Application of the Rule 23(b)(3) "superiority" factors shows that a class

27 action is the preferred procedure for this Settlement. The amount of damage to

28 which an individual class member would be entitled is not large. *Zinser*, 253 F.3d at

- 20 -

1191. It is neither economically feasible, nor judicially efficient, for the hundreds of thousands of Class members to pursue their claims against Gaspari on an individual basis. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Hanlon*, 150 F.3d at 1023; *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808 (1971). Additionally, the fact of settlement eliminates any potential difficulties in managing the trial of this action as a class-action. When "confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

## C.   THE PROPOSED FORM AND METHOD OF CLASS NOTICE SHOULD BE APPROVED.

The threshold requirement concerning the sufficiency of class notice is whether the means employed to distribute the notice is reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the Class members' rights to opt out or object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). The mechanics of the notice process are within the discretion of the court, subject only to the broad "reasonableness" standards imposed by due process.  In the Ninth Circuit, a notice of settlement fulfills due process where it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill*, 361 F.3d at 575 (citing *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)); *Hanlon*, 150 F.3d at 1025 (notice should provide each absent class member with the opportunity to opt-out and individually pursue any remedies that might provide a better opportunity for recovery).

The proposed long-form and short-form notices fulfill these requirements as to both form and content.  *See* Settlement Agreement, Exhibits D (long-form

BESHADA
FARNESE LLP

1   notice) & E (short-form notice).  The proposed Class Notice - collectively the long

2   form Notice of Class Action Settlement and the Publication Notice - satisfies these

3   content requirements. *See* Settlement Agreement, Exs. D (long form notice) and E

4   (Publication Notice). The Class Notice is written in simple, straightforward

5   language and includes: (1) basic information about the lawsuit; (2) a description of

6   the benefits provided by the settlement; (3) an explanation of how Class members

7   can obtain settlement benefits; (4) an explanation of how Class members can

8   exercise their right to opt-out or object to the settlement; (5) an explanation that any

9   claims against Gaspari that could have been litigated in this action will be released

10  if the Class member does not opt out from the Settlement; (6) the names of Class

11  Counsel and information regarding attorneys' fees and expenses, and Plaintiffs'

12  incentive awards; (7) the Settlement Hearing date; (8) an explanation of eligibility

13  for appearing at the Settlement Hearing; and (9) the Settlement Website and a toll

14  free number where additional information can be obtained.  These notices were

15  modeled after, and conform to, the Federal Judicial Center Guidelines on "plain

16  language" class notices. *See* Azari Decl. at ¶¶26-27.  Collectively, the Class Notice

17  provides Class members with sufficient information to make an informed and

18  intelligent decision about the settlement.  As such, the notices satisfy the content

19  requirements of Rule 23. *Id*.

20        Accordingly, the publication program and content of the notices constitutes

21  the best notice practicable under the circumstances and fully complies with the

22  requirements of Rule 23. *Id*

23

24

25

26

27

28

BESHADA
FARNESE LLP

## V.   CONCLUSION

The parties respectfully submit the proposed settlement is fair, adequate, reasonable, and in the best interest of the Settlement Class.  Under the applicable criteria and guidelines, (i) the proposed settlement should be preliminarily approved by the court; (ii) the Settlement Class should be conditionally certified for the purposes of the settlement; (iii) Beshada Farnese LLP should be appointed as Class Counsel and Plaintiffs should be appointed as Class Representatives; (iv) the court should approve the proposed form, method and schedule of class notice; and (v) the court should schedule a final approval hearing.

DATED: October 24, 2012               BESHADA FARNESE LLP


                                      By:      /s/Peter J. Farnese
                                         Peter J. Farnese
                                         Attorneys for Plaintiffs

BESHADA
FARNESE LLP